# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT ANDREW SPELKE,          :

      *Plaintiff,*          :

      v.          :     **Civil No. 06-1887 (RJL)**

ALBERTO R. GONZALES,          :

      *Defendant.*          :
                       :

...o0o...

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

NOW COMES the Defendant, Alberto R. Gonzales, United States Attorney

General, by the undersigned counsel and moves pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure to dismiss the claims in the above-referenced suit brought

pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 <u>et seq</u>. and the

Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a, for

failure to exhaust administrative remedies and for failure to state a claim upon which

relief may be granted.

In the alternative, the Defendant additionally moves pursuant to Rule 56 for the

entry of judgment[1] because there are no genuine issues of material fact and the Defendant

---

[1] Plaintiff should take notice that any factual assertions contained in the affidavits in support of this motion will be accepted by the Court as true unless plaintiff submits her own declaration or other documentary evidence contradicting the assertions in the attached affidavits.  <u>See</u> <u>Neal v. Kelly</u>, 963 F.2d 453 (D.C. Cir. 1992) and Rule 56(e) of the Federal Rules of Civil Procedure which provide as follows:

is entitled to judgment as a matter of law.

Pursuant to Local Rules 7(a), ©, and (h) respectively, a memorandum of points and authorities supporting this motion, a statement of material facts as to which there is

---

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

no genuine dispute, and a proposed order consistent with the relief requested herein are

attached.

                        Respectfully submitted,

                        Rod J. Rosenstein
                        United States Attorney

Date: January 9, 2007          By:_____/s/_____
                                Allen F. Loucks
                                Assistant United States Attorney
                                36 South Charles Street
                                Fourth Floor
                                Baltimore, Maryland 21201
                                (410) 209-4812 – phone
                                (410) 962-2310 – fax
                                allen.loucks@usdoj.gov


                        _____/s/_____
                        Jill Weissman
                        Assistant General Counsel
                        General Counsel's Office
                        Executive Office of United States Attorneys
                        501 3rd Street, N.W.
                        Washington, D.C. 20530
                        (202) 514-5462 – phone
                        jill.weissman@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ROBERT ANDREW SPELKE,** | : | |
| *Plaintiff,* | : | |
| **v.** | : | **Civil No. 06-1887 (RJL)** |
| **ALBERTO R. GONZALES,** | : | |
| *Defendant.* | : | |
| | : | |

...o0o...

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I. Introduction

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), Defendant, Alberto Gonzales, Attorney General, U.S. Department of Justice moves to dismiss the claims in the above-referenced suit brought pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq. and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §633a, for failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted. Alternatively, pursuant to Rule 56 of the Federal Rules, Defendant moves for summary judgment because there are no genuine issues in dispute and Defendant is entitled to judgment as a matter of law.

First, Plaintiff's claim regarding his non-selection was not timely raised with an EEO counselor and thus should be dismissed. Plaintiff has also raised in this complaint

for the first time an allegation of retaliation which has not been exhausted administratively and therefore also is properly dismissed.  Furthermore, as discussed more fully below, none of Plaintiff's claims has merit.  Plaintiff fails to meet even the relatively minimal burden of establishing a prima facie case with regard to his disability and retaliation claims.  Plaintiff cannot establish that he was a qualified individual with a disability or that he was regarded as having a disability for purposes of his Rehabilitation Act claim; thus, he cannot establish a prima facie case of disability discrimination.  He also fails to establish a prima facie case of retaliation because the decision makers in his non-selection were unaware of any protected activity.

Even if Plaintiff could establish a prima facie of discrimination based on either his age or disability, or retaliation, he cannot show any facts to dispute the agency's legitimate, non-discriminatory and non-retaliatory reasons for those actions.  Accordingly, Defendant is entitled to either dismissal of all claims or to summary judgment as to all claims.

## II. Facts

On July 7, 2004, Plaintiff submitted an application by mail for a position as an Assistant United States Attorney ("AUSA") with the Civil Division in the United States Attorney's Office for the District of Columbia.  Defendant's Statement of Material Facts Not in Dispute ("Def. Undisputed Facts"), ¶ 1.  See exhibit 1 ¶ 8.  On July 16, 2004, Plaintiff was interviewed for the position  by Craig Lawrence, Acting Chief, Civil

Division; Daniel Van Horn, Deputy Chief, Civil Division; Doris Coles-Huff, Deputy Chief, Civil Division; and AUSA Lisa Goldfluss.  Def. Undisputed Facts, ¶ 5.  Plaintiff's name was not referred to the United States Attorney for further consideration after his initial round of  interviews because he was not deemed to be one of the most desirable candidates for the position.  Def. Undisputed Facts, ¶ 6.

Plaintiff wrote a letter to U.S. Attorney Kenneth Wainstein dated October 6, 2005, inquiring about the status of his application and suggesting that he was not selected because of discrimination based on his age or disability.  On December 7, 2005, Principal Assistant United States Attorney Channing D. Phillips responded to the letter from Plaintiff, advising him that neither his age nor his physical condition were factors in management's consideration of his application, and advising him that the USAO was unable to offer him a position at that time.  Def. Undisputed Facts, ¶ 9.

On December 21, 2005, Plaintiff filed a formal complaint with the Executive Office for United States Attorneys ("EOUSA") Equal Employment Opportunity Staff alleging discrimination on the basis of his age and physical disability when he was not offered a position in the Civil Division of the USAO.  Def. Undisputed Facts, ¶ 10.  That complaint was investigated and subsequently referred to the Department of Justice Complaint Adjudication Office for issuance of a final agency decision on September 21, 2006.

3

III. <u>Argument</u>

A. <u>Standards of Review</u>

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). The well-pled factual allegations of the complaint must be presumed true. <u>Kowal v. MCA Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994). While plaintiff is entitled to all favorable inferences that can be drawn from those allegations, <u>Warth v. Seldon</u>, 422 U.S. 490, 501 (1975), the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. <u>Kowal</u>, 16 F.3d at 1276. Further, while the court must accept plaintiff's allegations of fact as true, the Court is not required to accept as correct the conclusions plaintiff would draw from such facts. <u>Taylor v. Federal Deposit Insurance Corp.</u>, 132 F.3d 753, 762 (D.C. Cir. 1997); <u>National Treasury Employees Union v. United States</u>, 101 F.3d 1423, 1430 (D.C. Cir. 1996).

Rule 12 of the Federal Rules of Civil Procedure goes on to state that where matters outside the pleadings are presented to the court in support of a motion to dismiss under Rule 12(b)(6), such motion shall be treated as a motion for summary judgment and disposed of under Rule 56. Thus, as to the motion to dismiss under Rule 12(b)(6), the standards governing disposition of motions under Rule 56 apply.

Summary judgment is appropriate where, as here, "the pleadings, depositions,

4

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A

genuine issue of fact is one which could change the outcome of the litigation.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

Thus, the nonmovant cannot manufacture genuine issues of material fact with

"some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986), or with "conclusory allegations . . unsubstantiated

assertions, . . . or a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075

(5th Cir. 1994) (citations omitted).  Importantly for this case,

> [b]y pointing out the absence of evidence to support the nonmoving party's
> case, the moving party can demonstrate that there is no genuine issue as to
> any material fact, therefore entitling it to summary judgment.

Shelborne v. Runyon, 1997 WL 527352 at **3, citing Celotex, 477 U.S. at 325.  Plaintiff

also cannot create a factual issue of pretext based merely on personal speculation of

discriminatory intent.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (claims

cannot rest "entirely upon a conclusory representation" by plaintiff); Slaughter v. Allstate

Ins. Co., 803 F.2d 857, 860-61 (5th Cir. 1986).

B. <u>Failure To Exhaust Administrative Remedies</u>

Plaintiff brings his claims under Title VII, the Age Discrimination in Employment Act, and the Rehabilitation Act. It is well-settled, indeed axiomatic, that a federal employee seeking access to federal court in an employment discrimination case under these statutes must first timely pursue and exhaust his or her administrative remedies. See 42 U.S.C. § 2000e-16©, (e); 29 C.F.R. § 1614.407; <u>Brown v. General Services Administration</u>, 425 U.S. 820, 832 (1976); <u>West v. Gibson</u>, 527 U.S. 212, 219-20 (1999); <u>Taylor v. Small</u>, 350 F.3d 1286, 1292 (D.C. Cir. 2003); <u>Bowden v. United States</u>, 106 F.3d 433, 437-38 (D.C. Cir. 1997); <u>Bayer v. Department of the Treasury</u>, 956 F.2d 330, 333 (D.C. Cir. 1992); <u>Mondy v. Secretary of the Army</u>, 845 F. 2d 1051, 1055 n.6 (D.C. Cir. 1988); <u>Brown v. Marsh</u>, 777 F.2d 8, 13 (D.C. Cir. 1985); <u>Kizas v. Webster</u>, 707 F.2d 524, 544-45 (D.C. Cir. 1983) ("sine qua non" for civil action in federal court is EEO complaint formally filed with the agency charged with discrimination), <u>cert</u>. <u>denied</u>, 464 U.S. 1042 (1984); <u>Mack v. Strauss</u>, 134 F. Supp. 2d 103, 109-110 (D.D.C. 2001); <u>Powell v. Reno</u>, 1999 U.S. Dist. LEXIS (D.D.C. 1999) ("only after a plaintiff has timely sought counseling and exhausted his administrative remedies may this court hear the subject matter of his claim.").[2] If a plaintiff fails to exhaust administrative remedies on a

---

[2] The D.C. Circuit has explained the "required recourse" to the EEO administrative process has "special prominence" with respect to the employment discrimination claims of federal employees. <u>See Kizas v. Webster</u>, 707 F.2d 524, 544-45 (D.C. Cir. 1983), <u>cert. denied</u>, 464 U.S. 1042 (1984).

discrimination claim, the plaintiff may not raise the claim in federal district court.  Id.

This requirement is "not a mere technicality," rather, it is more closely akin to a condition

precedent, and accordingly, the D.C. Circuit has admonished that a district court should

not permit a litigant to bypass the administrative process.  Park v. Howard University, 71

F.3d 904, 907-09 (D.C. Cir. 1995).

The legislative history of Title VII demonstrates that while an aggrieved federal

employee has the right to eventually seek a federal court forum for a discrimination claim,

there are distinct "preconditions" attached to that right.  Brown, 425 U.S. at 831.  The

preconditions include timely invoking and proceeding through the EEO administrative

process, currently set forth at 29 C.F.R. Part 1614.[3]  Thus, these federal laws provide a

"complementary administrative and judicial enforcement mechanisms designed to

eradicate federal employment discrimination."  Brown, 425 U.S. at 831.

The Supreme Court recently emphasized that "'strict adherence to the procedural

---

[3] By regulation,  a federal employee who believes himself to be aggrieved must first seek EEO counseling within forty-five (45) days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1).  Thereafter, under 29 C.F.R. § 1614.106(a), the employee must file a formal complaint of discrimination with the agency that allegedly engaged in discrimination.  This is done through an agency's Civil Rights or EEO Office, which is also responsible for conciliation, 29 C.F.R. § 1614.105(b)(2), conducting an investigation of the discrimination allegations, 29 C.F.R. § 1614.108, and further processing the formal complaint in the administrative process, which may include either a hearing before an EEOC Administrative Judge, 29 C.F.R. § 1614.109, or a final determination by the agency, 29 C.F.R. § 1614.110(b).  The means by which an employee may subsequently file a civil action in federal court are set forth with specificity by regulation.  See 29 C.F.R. § 1614.407.

7

requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" AMTRAK v. Morgan, 536 U.S. 101, 153 L. Ed. 2d 106, 122 S. Ct. 2061, 2070 (2002) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826, 65 L. Ed. 2d 532, 100 S. Ct. 2486 (1980)). Failure to comply with these requirements does not erect a jurisdictional bar to suit, but rather is an affirmative defense which the defendant must plead and prove. Morgan, 122 S. Ct. at 2076-77; Bowden, 106 F.3d at 437. This affirmative defense, like a statute of limitations, is subject to equitable tolling, estoppel, and waiver, but these equitable remedies must be applied sparingly. Morgan, 122 S. Ct. at 2072, 2076-77; Bowden, 106 F.3d at 437; Jarmon v. Powell, 208 F. Supp. 2d 21, 26 (D.D.C. 2002). Plaintiff has not established any basis for equitable relief to excuse his failure to exhaust.

Plaintiff's entire complaint is properly dismissed for failure to timely exhaust administrative remedies. In his formal complaint, Plaintiff indicated that he first sought EEO counseling on October 28, 2005. Def. Undisputed Facts, ¶ 8. Although Plaintiff argues that he became aware he was not selected when he received a letter from Channing Phillips in December 2005, that is not the operative date for determining timely counselor contact. This Court has previously held that when an individual alleges that a non-selection was discriminatory, it is the not the date on which they learned of the non-selection that triggers the 45-day time period, but rather the date on which the decision became effective. Silver v. Leavitt, 2006 WL 626928 (D.D.C. 2006); see also James v.

8

England, 332 F. Supp.2d 239, 244-246 (D.D.C. 2004). All the candidates hired over Plaintiff entered duty more than 45 days before Plaintiff sought counseling. The record here shows that John Henault and Andrea McBarnette entered on duty September 7, 2004; Mercedeh Momeni entered on duty March 20, 2005; John Truong entered on duty April 17, 2005; Benton Peterson entered on duty May 1, 2005; Megan Rose entered on duty July 10, 2005; and Kathleen Konopka entered on duty August 21, 2005. Def. Undisputed Facts, ¶ 7. As each of these was more than 45 days prior to Plaintiff's contact with an EEO counselor, the claims are properly dismissed pursuant to 29 C.F.R. §1614.105(a)(1).

In the event the entire matter is not dismissed as untimely, Plaintiff's allegation of retaliation must be dismissed because he did not properly exhaust that claim during the administrative process. Plaintiff never raised a claim of retaliation during the administrative processing of his complaint, nor was it investigated by the Agency. He checked the boxes for "age" and "disability" on the EEO complaint form, but did not check the box marked "reprisal." Def. Undisputed Facts, ¶ 10. The alleged retaliation as described in the complaint is the receipt of the December 7, 2005, letter, which occurred prior to Plaintiff's filing of the formal complaint on December 21, 2005. (Complaint ¶ 41). It is undisputed that Plaintiff was aware of the letter at the time he filed the complaint, as it is specifically mentioned in that complaint; thus, there is no justification for his having raised the retaliation claim for the first time in the civil action. See exhibit 14. Even if the claim of retaliation had arisen after the filing of the formal complaint,

there is no exception to the exhaustion requirement for claims of retaliation.  See, e.g.

Prince v. Rice, 453 F. Supp.2d 14 (D.D.C. 2006).  Thus, this claim should properly be

dismissed for failure to exhaust administrative remedies.

C. Summary Judgment

There is no direct evidence of discriminatory intent or bias.  In the absence of such

evidence, the plaintiff is required to employ the familiar burden shifting analytical

framework set out by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792

(1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).  In

any discrimination action, a Plaintiff first must present a prima facie case of

discrimination.  McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 252-53.  Then,

the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for his

or her action.  McDonnell Douglas, 411 U.S. at 803; Burdine, 450 U.S. at 253.

This burden is not one of persuasion, but only of production.  To sustain this

burden, an employer need only introduce evidence from which the trier of fact could

rationally conclude that the employer was not motivated by discriminatory animus.

Burdine, 450 U.S. at 257.  Finally, the burden shifts back to Complainant to prove, by a

preponderance of the evidence, either that the employer's reason is a pretext for

discrimination or that it is more likely than not that the employer was motivated by

discrimination.  McDonnell Douglas, 411 U.S. at 804; Burdine, 450 U.S. at 253.  At this

point, Complainant's burden merges with the ultimate burden of proving that he was a

10

victim of intentional discrimination.  <u>Burdine</u>, 450 U.S. at 256.  The ultimate burden of

persuading the trier of fact that an employer intentionally discriminated against

Complainant remains with Plaintiff throughout the entire case.  <u>Burdine</u>, 450 U.S. at 253.

To establish a claim of intentional discrimination, Plaintiff must prove

discriminatory animus on the part of the employer.  <u>International Brotherhood of</u>

<u>Teamsters v. United States</u>, 431 U.S. 324, 335, n.14 (1977).  In order to show pretext and

that the defendant's proffered reason was not the true reason for its employment decision,

the plaintiff must show "<u>both</u> that the reason was false, <u>and</u> that discrimination was the

real reason."   <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 515 (1993).  The plaintiff

at all times carries the ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated.  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248,

256 (1981);  <u>Hicks</u>, 509 U.S. at 507.  In an age discrimination case, a plaintiff bears the

additional burden of showing that "but for" his age, he would have been selected for the

position. <u>Threadgill v. Spellings</u>, 435 F. Supp.2d 126 (D.D.C., 2006).

In order to meet the final burden of persuasion in a non-selection case, a plaintiff

must provide <u>some</u> evidence, beyond the mere fact that the Plaintiff and the selectee differ

with respect to some protected characteristic, that such a characteristic in fact played a role

in the particular employment decision under examination.  See <u>Smith v. Chamber of</u>

<u>Commerce</u>, 645 F. Supp. 604, 609-10 and n.4 (D.D.C. 1986), <u>Skelton v. ACTION</u>, 668 F.

Supp. 25, 30 (D.D.C. 1987).  The Plaintiff "must do more than to fall back on [his] *prima*

11

*facie* case." Skelton, 668 F. Supp. at 26, n. 3.  Moreover, evidence that merely discredits

an employer's reason for rejection is not sufficient to defeat a summary judgment motion:

> Evidence that the reasons given by the employer for the employment decisions were
> not the "real" ones does not prove ... discrimination:  rather it only provides that
> some other reason motivated the employer.  Absent some evidence that the real
> reason was the employee's age, race, sex or other protected characteristic, ... it is
> impossible for an employee who challenges the decisions as discriminatory to
> survive a motion for summary judgment.

Id. at 29 (quoting Snyder v. Washington Hospital Center,  36 FEP Cas. 445, 448 (D.D.C.

1984)).

In Skelton, for example, an employee successfully presented a *prima facie* case, but

failed to defeat a motion for summary judgment after the government provided a

nondiscriminatory reason for the non-selection, because she offered no evidence to support

the assertion that a protected characteristic was a determining factor.  Instead the employee

relied only on discrediting the defendant's proffered reason for the non-selection by

presenting evidence that she was better qualified than the selectee.  Skelton, 668 F. Supp.

at 30-31.  Likewise in Snyder, the discharged employee provided no evidence that a

protected characteristic may have been the "determining factor" in the employee's

discharge other than the mere fact that the discharged employee and similarly situated

individuals differed with regard to that protected characteristic.  36 FEP Cas. at 448.

Finally in Smith, summary judgment in favor of the employer was granted in part because

the employee failed to show sufficient evidence of pretext or that a protected characteristic

was a determining factor.  In that case, the employee in opposition to an employer's

12

motion for summary judgment also unsuccessfully attempted to discredit the employer's proffered reasons for management's actions.  645 F. Supp. at 610.

### 1. No Prima Facie Case

The Rehabilitation Act prohibits federal agencies from discriminating against any "otherwise qualified individual with a disability" solely because of his disability. 29 U.S.C. § 794(a).  To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that he: "(1) is an individual with a disability (2) who, with or without reasonable accommodation, can perform the essential functions of the position, and (3) who suffered an adverse employment decision." Baker v. Potter, 294 F.Supp.2d 33, 42 (D.D.C. 2003) (citing Breen v. Dep't of Transp., 282 F.3d 839, 841 (D.C. Cir. 2002)).

The Rehabilitation Act defines an "individual with a disability" as "any person who: (I) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).   In order to establish that the Agency "regarded" Plaintiff as disabled, he must show two things: (1) that he was perceived as having a physical or mental impairment; and (2) that the impairment was perceived to substantially limit one or more of his major life activities. Mack v. Strauss, 134 F.Supp.2d 103, 109 (D.D.C. 2001).

Plaintiff alleges both that he has a physical disability (cancer) and that he was

13

regarded as disabled by the USAO when he was not selected for the position as an AUSA in the Civil Division. (Complaint ¶ 33). Plaintiff cannot establish that he has a physical or mental impairment which substantially limits any major life activities. According to his affidavit, Plaintiff suffers from "multiple pheochromocytomas." Plaintiff indicated that he suffers from partial hearing loss in one ear, a "rasp" in his voice, and high blood pressure. He also indicated that while undergoing chemotherapy he suffered from temporary sterilization. Exhibit 1 ¶ 14. While Plaintiff's cancer is indeed a physical impairment, that alone is not sufficient; he must also demonstrate that the impairment actually limits a major life activity. Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184 (2002).

Under the Equal Employment Opportunity Commission's definition, the term "substantially limits" means: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. §1630.2(j). The record in this case clearly establishes that Plaintiff's medical condition

14

does not render him unable, or significantly restrict his ability, to perform any major life activities; thus, he is not disabled within the meaning of the Rehabilitation Act.

Plaintiff could also establish a claim of disability discrimination if he was regarded as having a disability.  29 U.S.C. § 705(20)(b)(iii).  An individual is "regarded as" disabled if the employer "mistakenly believes that [the] person has a physical impairment that substantially limits one or more major life activities" or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999).  There is no indication whatsoever in the record that those who interviewed Plaintiff for the position, and ultimately decided not to recommend him for selection, even knew of his medical condition, much less that they considered him to be disabled.  When asked about Plaintiff's disability during the agency's investigation of Plaintiff's EEO complaint, the then Acting Chief, Civil Division, Craig Lawrence, stated in his affidavit, "[A]s far as I know, he is not disabled."  Exhibit 3 ¶ 12.  Similarly, the other interviewers indicated that they only became aware of Plaintiff's medical condition after he was not selected for the position.  Exhibit 4 ¶ 13; Exhibit 5 ¶ 11; Exhibit 6 ¶ 10.  Since none of those involved in the decision were aware of Plaintiff's medical condition at the time of his non-selection, Plaintiff cannot show that his non-selection was motivated by management's perception that he was disabled.

Assuming arguendo that Plaintiff's retaliation claims are not dismissed for failure

to exhaust administrative remedies, they are insufficient as a matter of law and summary judgment should be granted.  To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity[4], which was known by the alleged retaliator, (2) he was subject to an adverse action, and (3) there is a causal link between the adverse action and the protected activity.  Paquin v. Federal National Mortgage Association,119 F.3d 23, 31 (D.C. Cir. 1997); Passer v. American Chem. Soc'y, 935 F.3d 322, 331 (D.C. Cir. 1991); Mitchell v. Baldridge,  759 F.2d 80, 86 (D.C. Cir. 1985); McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984).  A causal connection may be established by showing that the employer had knowledge of the employee's protected activity and that the adverse personnel action took place shortly after that activity.  Carney v. American University, 151 F.3d 1090, 1094 (D.C. Cir. 1998).  The greater the time that elapses between the protected activity and the alleged acts of retaliation, the more difficult it is to demonstrate any causal connection.  Saunders v. DiMario, No.Civ.A. 97-1002 (PLF), 1998 WL 525798, *5 (D.D.C. Aug. 14, 1998).  As set forth below, the decision-makers involved in Plaintiff's non-selection were unaware of any protected activity, and the decision not to refer him for further consideration was made before any protected

---

[4] The relevant statute states that it is unlawful for an employer to discriminate against any of his employees or applicants for employment because he or she has opposed any practice made an unlawful employment for purposes of Title VII, or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title. DeMedina v. Reinhardt, 444 F.Supp. 573, 580 (D.D.C. 1978), citing, 42 U.S.C. § 2000e-3.

16

activity.  Hence, Plaintiff cannot establish a prima facie case of retaliation.

Plaintiff contends that his letter to USA Kenneth Wainstein dated October 6, 2005, constituted protected activity because it "invoked federal anti-discrimination laws," and that the decision not to select him was "a direct and proximate result" of his "protest under federal anti-discrimination laws."  (Complaint ¶¶ 41-42).  However, the decision not to refer Plaintiff to the U.S. Attorney for further consideration was made almost immediately following his interviews, in July 2004.  Def. Undisputed Facts, ¶ 6; see exhibit 3 ¶ 8.  When the letter was received by the U.S. Attorney in 2005, Principal Assistant United States Attorney Channing Phillips was asked to look into the matter.  Phillips then contacted Lawrence to discuss Plaintiff's application, and was advised that Plaintiff was not referred for further consideration because he did not interview as well as the other candidates who were referred.  Def. Undisputed Facts, ¶ 9; exhibit 13 ¶ 12

The purpose of Phillips' response to Plaintiff's attorney on December 7, 2005, was merely to respond to his allegation that the reason he was not selected in 2004 was discriminatory.  Exhibit 12.   It is apparent from that letter that it references a decision not to select Plaintiff that occurred at some time in the past, well before any purported protected activity by Plaintiff.  Id.

In Craig Lawrence's affidavit, he explains that after the interviews were conducted, he and the deputies determined that Plaintiff was not among the candidates who should be recommended to the U.S. Attorney for further consideration.  Exhibit 3 ¶ 11, 13.

Lawrence then identified the five candidates that were recommended, each of whom was ultimately hired. Id. ¶ 13. It is clear that the decision not to select Plaintiff pre-dated his October 2005 letter by more than a year. Further, Phillips and Wainstein were the two management officials who were aware of the October letter, and both denied having any involvement in the interview or selection process as it related to Plaintiff. Def. Undisputed Facts, ¶ 6; exhibit 7 ¶ 6; exhibit 13 ¶ 7. Since Plaintiff cannot show that he had engaged in protected activity and that the responsible management officials were aware of it at the time they made their decision, he cannot satisfy an essential element of a prima facie case of retaliation. Moreover, because Plaintiff's protected activity took place after the decision was made to not refer him for further consideration, Plaintiff cannot show that his non-selection was casually related to his protected activity

    2. Defendant Articulated a Legitimate Reason and No Evidence of Pretext

Even assuming, arguendo, that the facts in this case support a prima facie case of discrimination based on age, disability and/or retaliation, management has articulated legitimate nondiscriminatory reasons for its actions.

Interviewers Lawrence, Coles-Huff, and Van Horn all expressed similar concerns regarding Plaintiff's desire for the Civil Division position after their interviews with him. Lawrence indicated that he asked Plaintiff why he wanted to leave his current position for a job with the Civil Division at the USAO, and that Plaintiff responded that he disliked the travel associated with the job he was in, and that he wanted to travel less. Def. Undisputed Facts, ¶ 6. Lawrence explained that, because of the demanding workload associated with

the position, he felt it was important that a candidate wanted to come to the Civil Division, as opposed to simply leaving a less agreeable position. Id.; exhibit 3 ¶ 10.

Lawrence also discussed Plaintiff with two USAO employees who had worked with him when he was previously employed by the USAO; their responses were "equivocal." Exhibit 3 ¶ 8. Van Horn expressed the same concern after he interviewed Plaintiff, noting that he stated that his reason for seeking the job in the Civil Division was because he wanted a job that required less travel. Def. Undisputed Facts, ¶ 6; exhibit 4 ¶ 11. Van Horn explained that Plaintiff's experience qualified him for the job, but that there were other candidates who were deemed better qualified. Id. Coles-Huff also indicated that Plaintiff was qualified for the position, but had concerns about his desire to work in the Civil Division in order to escape the travel demands of his current position. Def. Undisputed Facts, ¶ 6; exhibit 5 ¶¶ 8, 9. Coles-Huff also had some concern about Plaintiff's level of recent written work in civil proceedings. Id. ¶ 9.

Plaintiff, presumably, will attempt to compare himself to other individuals hired around the same time period in which he had submitted his application. But Lawrence also explained in his affidavit the reasons why he recommended several of the individuals he referred to the U.S. Attorney for further consideration. See exhibit 3 ¶ 17. He noted that Megan Rose was, at the time of her selection, an attorney in the Department's Honor's Program who was assigned to the Civil Division. Id. Thus, the Civil Division played no role in her selection and, consequently, she is not similarly situated to plaintiff. Additionally, Lawrence indicated that Mercedeh Momeni had excellent academic

credentials and significant Title VII experience, which is a part of the Civil Division's practice.  Id.  There is no indication that plaintiff had any relevant experience in this substantive area of the law so critical to the Civil Division's practice.  Moreover, Benton Peterson had previously worked in the Civil Division as a Special Assistant U.S. Attorney for more than a year and had "done an excellent job."  Id.  Hence, contrary to plaintiff, he too had a year's experience of the exact work relevant to the Civil Division's practice and was personally known to the decision-makers to be an excellent candidate.  Finally, Katherine Konopka was a former Assistant U.S. Attorney who had excellent credentials. Id.  By contrast, two employees with direct knowledge of plaintiff's tenure as a prosecutor in the office were "equivocal" about his performance there and whether he should by re-hired into the office.  These statements from those responsible for the selection recommendations clearly satisfy management's burden of articulating a legitimate, nondiscriminatory reason for its actions, and Plaintiff offers no evidence that these reasons were in any way a pretext for intentional discrimination.

Plaintiff's sole argument appears to be his subjective contention that he had more experience than the other candidates for the position, and therefore management's reasons for not selecting him must have been discriminatory.  Exhibit 1 ¶ 9; exhibit 15.  Pretext may be found in a non-selection case when a plaintiff can show that his qualifications are demonstrably superior to those of the selectees.  Bauer v. Bailar, 647, F.2d 1037, 1048 (10th Cir. 1981); Fishbach v. District of Columbia Department of Corrections, 86 F.3d

1180, 1183 (D.C. Cir. 1986).  However, plaintiff cannot satisfy his burden of demonstrating pretext "simply based on [his] own subjective assessment of [his] own performance, for plaintiff's perception of [himself], and [his] own performance, is not relevant." Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (citing Smith v. Chamber of Commerce of the United States, 645 F. Supp. 604, 608 (D.D.C. 1986)).

Title VII "does not authorize a federal court to become a 'super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 337 U.S. App. D.C. 50, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)).  Rather, where there is no evidence that an employer's offered reason is a pretext, then "the court must respect the employer's unfettered discretion to choose among qualified candidates." Fischbach, 86 F.3d at 1183. Unless the disparities in qualifications "are so apparent as to virtually jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise." Odom v. Frank, 3 F.3d 839, 846 (5th Cir. 1993).  There is no such disparity in this case, and no other evidence of discrimination.  See, e.g., Walker v. Dalton, 94 F. Supp. 2d 8, 16 (D.D.C. 2000) (finding that "in the absence of any other evidence that would allow a jury to infer that discrimination took place in a particular case, slight questions of comparative qualifications do not warrant a jury trial."); Vasilevsky v. Reno,

21

31 F. Supp. 2d 143, 150 (D.D.C. 1998) (concluding that plaintiff's arguments regarding "comparison of her qualifications with those of the selected candidates truly misses the point. It is the plaintiff's duty to put forth evidence of discrimination, not to 'quibble about the candidates' relative qualifications.'").

Based on the complete lack of evidence of pretext with regard to these matters, Defendant is entitled to summary judgement as a matter of law.

IV. <u>Conclusion</u>

For all the foregoing reasons, defendant respectfully requests that the Court grant

22

his Motion to Dismiss or, in the Alternative, for Summary Judgment and that, based on

such, Plaintiff's complaint be dismissed in entirety and with prejudice.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

January 9, 2007                    By:_____/s/_____
                                   Allen F. Loucks
                                   Assistant United States Attorney
                                   36 South Charles Street
                                   Fourth Floor
                                   Baltimore, Maryland 21201
                                   (410) 209-4812 – phone
                                   (410) 962-2310 – fax
                                   allen.loucks@usdoj.gov


                                   _____/s/_____
                                   Jill Weissman
                                   Assistant General Counsel
                                   General Counsel's Office
                                   Executive Office of United States Attorneys
                                   501 3rd Street, N.W.
                                   Washington, D.C. 20530
                                   (202) 514-5462 – phone
                                   jill.weissman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROBERT ANDREW SPELKE,** | : | |
| *Plaintiff,* | : | |
| **v.** | : | **Civil No. 06-1887 (RJL)** |
| **ALBERTO R. GONZALES,** | : | |
| *Defendant.* | : | |
| | : | |

...o0o...

**DEFENDANT'S STATEMENT OF**
**MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 7(h), Defendant hereby submits the following statement of material facts as to which there is no genuine dispute.

1. On July 7, 2004, Plaintiff submitted an application by mail for a position with the Civil Division in the United States Attorney's Office for the District of Columbia. See exhibit 1 (Spelke Decl.) ¶ 8; exhibit 2 (Spelke Resume).

2. At the time of his application, Plaintiff had been employed as a Trial Attorney in the Department of Justice's Narcotics and Dangerous Drugs Section since 2003. Exhibit 2, at 1.

3. From 1997 through January 2003, Plaintiff was employed at the Drug Enforcement Administration, Domestic Criminal Law Section. Id. at 1-2.

4. From 1987 through 1997, Plaintiff was employed in the United States Attorney's Office for the District of Columbia ("USAO"). Id. at 2-3. During his tenure in the USAO,

Plaintiff worked in the Appellate Division, Misdemeanor Trial, Felony Trial, Grand Jury, Violent Crime and Narcotics Sections and the Homicide Unit.  Id.

5.  On July 16, 2004, Plaintiff was interviewed by Craig Lawrence, Acting Chief, Civil Division, Daniel Van Horn, Deputy Chief, Civil Division, Doris Coles-Huff, Deputy Chief, Civil Division, and Assistant United States Attorney Lisa Goldfluss.  Spelke Decl., ¶ 8.  See exhibit 3 (Lawrence Decl), ¶ 8; exhibit 4 (Van Horn Decl.) ¶ 8; exhibit 5 (Coles-Huff Questionnaire), ¶ 7; exhibit 6 (Goldfluss Questionnaire), ¶ 7.

6.  Plaintiff's name was not referred to the United States Attorney for further consideration after his initial interviews.  See exhibit 3 ¶ 8.  The USAO interviewers were concerned about Spelke's motives for making application to the Civil Division.  Spelke explained that he wanted to leave his then present position because of the burdens of travel, "but he said nothing about wanting to come to Civil."  Exhibit 3 ¶ 10.  As Acting Chief Lawrence put it: "Based on our crushing workload and shortage of people I believe that it is important to look for people [who] want to come to Civil not just leave a less agreeable position."  Id.  Accord exhibit 4 ¶ 11 ("Mr. Spelke responded that he was seeking this position so that he would not have to travel out of town, which he explained was often required with his present job.  I was concerned by this response because it indicated that Mr. Spelke's motivation was to leave his present job, not to come to the Civil Division."); exhibit 5 ¶ 9 ("I was concerned that rather than expressing an interest in working for the Civil Division, the applicant expressed that he wanted to escape the travel

demands of his current position.").  Because of the poor impression Plaintiff made at the interview, the Civil Division interviewers did not forward Plaintiff's name to the United States Attorney, Kenneth L. Wainstein, for consideration.  Exhibit 7 (Wainstein Decl.) ¶ 6.

7.  There were seven Assistant United States Attorneys hired into the Civil Division of the USAO in the time period from July 1, 2004 through December 7, 2005.  John Henault and Andrea McBarnette entered on duty September 7, 2004; Mercedeh Momeni entered on duty March 20, 2005; John Truong entered on duty April 17, 2005; Benton Peterson entered on duty May 1, 2005; Megan Rose entered on duty July 10, 2005; and Kathleen Konopka entered on duty August 21, 2005.  See exhibit 8 (Wilkinson Questionnaire), ¶ 11.

8.  On October 28, 2005, Plaintiff sought EEO counseling.  Exhibit 9 (EEO Intake Form; Exhibit 10 (October 28, 2005 letter from EEO Specialist Olga MacLean to Plaintiff. EEO counseling concluded on December 6, 2005.  Exhibit 11 (Notice of Final Interview and Right to File a Formal Complaint).  The final counseling interview occurred on December 6, 2005.  Id. at 1.

9.  On December 7, 2005, Principal Assistant United States Attorney Channing D. Phillips responded to an October 6, 2005 letter from Plaintiff regarding the status of his application. Exhibit 1 ¶ 8; exhibit 12 (December 7, 2005 letter from Channing Phillips to Kevin Byrnes, Esq.); exhibit 13 (Channing Decl.), ¶ 7.  Phillips advised Byrnes, Plaintiff's counsel, that neither Plaintiff's age nor his physical condition were factors in

3

management's consideration of his application, and advised him that the USAO was

unable to offer him a position at that time.  Exhibit 1 ¶ 8; see also exhibit 12.

10.  On December 21, 2005, Plaintiff filed a formal complaint with the Department

of Justice alleging discrimination on the basis of his age and physical disability when he

was not offered a position in the Civil Division of the USAO.  See exhibit 14 (Complaint

of Discrimination).  Plaintiff failed to make an administrative allegation of reprisal.  Id. at

1, box 5.  Suit in this Court was initiated prior to the rendering of a Final Administrative

Decision.  No EEOC hearing occurred.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


Date: January 9, 2007                    By:_____/s/_____
Allen F. Loucks
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4812 – phone
(410) 962-2310 – fax
allen.loucks@usdoj.gov


_____/s/_____
Jill Weissman
General Counsel's Office
Executive Office of United States Attorneys
501 3rd Street, N.W.
Washington, D.C. 20530
(202) 514-5462 – phone
jill.weissman@usdoj.gov

5

# Exhibit 1

Spelke v. Gonzales, Civil No.  06-1887 (RJL)

Exhibit 1 to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

# DECLARATION OF ROBERT ANDREW SPELKE
## COMPLAINT OF DISCRIMINATION
### AGENCY NO. USA-2006-00075 (HH)

As a preliminary matter, I preserve all rights accorded to me under 29 CFR 1614, et. seq. (Governing investigations into allegations of discrimination in the federal workplace). And I submit the following responses to the investigator assigned by the Agency. These answers are based on information known to me at the present time. I reserve the right to amend such answers and supplement them as additional facts become known.

Preliminary Questions:

    1.  What is your full name?

        Robert Andrew Spelke

    2.  What is your age and date of birth?

        Age: 48   Date of Birth: July 11, 1957

    3.  What is your position title and grade?

        Position and title: Trial Attorney, Narcotics and Dangerous Drugs Section (NDDS), Criminal Division, U.S. Department of Justice.
        Grade: GS 15 Step 8

    4.  What are your job duties?
        Investigate and prosecute international narcotics traffickers in the U.S. District Courts either in conjunction with or independent of the various U.S. Attorney's Offices (e.g., where the local U.S. Attorney's Office must recuse itself). Thus I perform the similar essential functions to those required by Assistant U.S. Attorney's.

    5.  Who is your supervisor?
        Presently my supervisors are Glenn Alexander and  Thomas Padden.

Accepted Issue:

    6.  Do you contend that the United States Attorney's Office for the District of Columbia (USAO-DC) had one or more Assistant United States Attorney (USAO) positions in its Civil Division which were vacant and available to be filled at any time during the period July 1, 2004 thru December 7, 2005?  Is so, please identify all such vacancies, when they became available, and all facts which support your contention.

Initial                     Page 1 of 6

**Declaration of Robert Andrew Spelke**
**Agency No. USA-2006-00075 (HH)**

Based on my information and belief, the USAO had at least four positions open during the time in question. The USAO hires AUSAs on a "rolling" basis, that is as the need arises. Given the sheer size of the USAO in the District of Columbia openings are not infrequent. During this time period, the USAO hired at least four individuals as AUSAs in the Civil Division. On December 2, 2005, Acting Chief Craig Lawrence was interviewed over the telephone by Investigator Olga MacLean and stated that there were still positions available at the USAO-DC Civil Division and I was still being considered for an AUSA position with the Civil Division.

7. How did you become aware of each position identified in your response to Question 6 above?

From individuals in the U.S. Attorney's Office.

8. Did you submit any application(s), during the period July 1, 2004, thru December 7, 2005, for any position(s) identified in your response to Question 6, above? If so, please identify the manner in which you applied, the date(s) of your application(s), and all other facts which support your contention.

On July 7, 2004, I submitted a formal application by mail for a position with the USAO-DC with a copy of my resume. I was interviewed for the position on July 16, 2004. On at least one occasion, date unknown, I personally visited Acting Chief Craig Lawrence to confirm my interest in returning to the USAO-DC. After no response, on August 1, 2005, I wrote a letter to United State Attorney Ken Weinstein asking for the status of my application. After receiving no response, on October 4, 2005, my attorney, Kevin Byrnes, wrote another letter to United States Attorney Weinstein again asking for the status of my application. On December 7, 2005, a letter was received by my attorney denying my application for an AUSA position with the Civil Division, without explanation as to a reason or justification. The denial appeared to be prospective as well.

9. Please state all facts which support your contention that you were qualified for any Civil Division AUSA position identified in your response to Question 8 above.

I have twenty-one years experience with the Department of Justice, including ten years with the USAO-DC. My performance ratings have been uniformly outstanding. I have litigated hundreds of matters in federal court and have ample experience in the analysis of federal cases and in their presentation to courts and juries. I am familiar with both DC Superior Court and federal judges in the District of Columbia. A resume and my last performance appraisal are attached.

Initial                     Page 2 of 6

**Declaration of Robert Andrew Spelke**
**Agency No. USA-2006-00075 (HH)**

10.  Describe the selection process you were required to undergo, including any interviews, dates of interviews and any comments made by management related to your qualifications, age, and/or any physical or mental impairments.  Please identify all interviewers and who, if anyone, you observed making notes.

As noted above, I was interviewed on July 16, 2004.  The interviewers were Acting Chief Craig Lawrence, Deputy Chief Dan Van Horn, Deputy Chief Doris Coles-Huff and AUSA Lisa Goldfuss.  I believe that Ms. Coles-Huff and Ms. Goldfuss took notes.  I have not seen these notes.

On information and belief, the interviewers asked questions of my former supervisors.  I am uncertain of the information they obtained but it was widely known in the USAO-DC office that I had had cancer while an Assistant U.S. Attorney.

11.  In response to any application identified in your response to Question 8, above, did the USAO-DC specifically decline to offer you a position or otherwise reject your application?  If so, please state all facts which support that contention.

As noted above, the USAO-DC wrote a letter to my attorney, Kevin Byrnes, dated December 7, 2005, declining my application.  This was the only correspondence received from the USAO-DC in the year and a half my application was pending.  The December 7, 2005, letter is attached to this declaration.

12.  Please identify any person(s) who were selected for any position(s) identified in your response to Question 6 above?  For each such person, please state, to the best of your knowledge, that person's age, whether the person has any physical or mental impairment, and all other facts which support your contention.

According to Mr. Monty Wilkinson, Executive Assistant United States Attorney for Management, USAO-DC, the following individuals were hired between July 2004 and December 2, 2005 for the position of AUSA in the Civil Division:

John F. Henault - 35 years old
Andrea W. McBarnette - 37 years old
Mercedeh Momeni - 37 years old
John C. Truong - 35 years old
Benton Peterson - 36 years old
Megan Rose - 28 years old
Kathleen Konopka - 35 years old

I do not know of any actual or perceived  physical or mental disabilities for any of these

Initial _____                                    Page 3 of 6

**Declaration of Robert Andrew Spelke**
**Agency No. USA-2006-00075 (HH)**

individuals.

13. Please state all facts upon which you rely in contending that you have an actual or perceived physical or mental impairment?

At the age of eighteen continuing until the present I have battled multiple pheochromocytomas. This is a very rare form of cancer. Specifically, tumors have been located in my stomach, neck, skull, liver, just outside the liver, chest and abdomen. Treatment for these various tumors included various surgeries, chemotherapy and radiation. Diagnosis entails repeated nuclear scans, X-rays and fluid examination.

14. For any impairment identified in your response to number 13 above, state whether such impairment substantially limits one or more of your major life activities, such as seeing, hearing, breathing, speaking, walking, caring for yourself, eating, thinking, learning, sleeping, reproducing, or working, please identify any such affected activities, the manner in which those activities are affected, and any other facts supporting your contention.

Hearing - a tumor and radiation to the left side of my skull has limited hearing in my left ear by approximately 80%.
Speech - a tumor in my chest as caused paralysis of one vocal cord causing a "rasp" in my voice.
Reproducing - Chemotherapy resulted in temporary sterilization.

The tumors secret epinephrine, a hormone that raises the blood pressure. I have been on medication to suppress the high blood pressure which sometimes causes light-headiness and dizzy spells.

15. Please state all facts upon which you rely in contending that the USAO-DC was aware of any impairment identified in your response to Question 13 above.

During my ten year tenure as an AUSA at the USAO-DC, I underwent numerous medical testing and ten months of chemotherapy for my cancer. Accordingly, the USAO-DC was well aware of my cancer, treatment and the need for continued maintenance and diagnostic care.

16. Please state the complete factual basis for your claim that the USAO-DC discriminated against you on the basis of an actual or perceived disability.

The factual basis currently known to me, although I , of course, have not had the opportunity to conduct discovery or cross-examine witnesses is as follows; the USAO-DC either perceives my continuing battle with cancer as a disability, or is using this disability either

Initial _____                                    Page 4 of 6

**Declaration of Robert Andrew Spelke**
**Agency No. USA-2006-00075 (HH)**

separately or in combination with my age to refuse to hire me despite the fact that I have more experience than the other candidates who they have hired during this period. It appears the USAO-DC Civil Division feels it cannot or does not want to provide the limited accommodations necessary for my treatment and testing.  When I was previously employed with the USAO-DC, I underwent chemotherapy.  Because of this, I needed to be taken from a trial position. My belief is that the USAO fears my physical impairment will prohibit me from holding a position. Given my ability to complete my current position, which involves equal or greater responsibilities and travel, this fear is unrealistic and not based on my current medical or physical condition.

17.  Please state the <u>complete</u> factual basis for your claim that the USAO-DC discriminated against you on the basis of your age.

The individuals hired instead of me are all under 40 years of age and each have less government and litigation experience than I.  In addition, Acting Chief Craig Lawrence indicated to Investigator Olga McLean, that he wanted "to bring on board someone he could teach".  The only explanation for this statement is that older, more experienced individuals can not be taught.

18.  Please identify all neutral, non-management, or other witnesses who might have relevant information regarding the allegations raised in your complaint.

I am unaware of such persons at this time save for those individuals who informed me regarding openings and the selection of AUSA's at the USAO-DC.

19.  Please state any other information you believe is relevant to or otherwise supports any of your contentions.

Without the benefit of discovery I have none at this time.

20.  Please state with specificity, the remedy you are requesting to resolve your complaint.

A position with the USAO-DC, Civil Division subject to an agreement not to further discriminate and reasonable attorney fees.

Initial                         Page 5 of 6

**Declaration of Robert Andrew Spelke**
**Agency No. USA-2006-00075 (HH)**

PURSUANT TO 28 U.S.C. SECTION 1746:

     I, Robert Andrew Spelke, declare under penalty of perjury that the foregoing responses, including those contained in any attached or corresponding Continuation Sheet(s), are true and correct and I give this statement under the presumption that all other persons who are knowledgeable in this case will also provide their statements under oath.

MAR - 3 2006

_____
DATE

ROBERT ANDREW SPELKE



Initial

Page 6 of 6

### PRIVACY ACT NOTICE TO COMPLAINANT
### FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

#### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

#### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, sections 5.2 and 5.3; Title 29, Code of Federal Regulations, section 1613-1614; Title 5, United States Code, sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

#### PURPOSES AND USES

The information you supply will be used along with data you supplied previously and information developed by the investigation to resolve your equal employment opportunity discrimination complaint. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve your equal employment opportunity discrimination complaint. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, or to others for uses published in the Federal Register.

#### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

_____          _____
Signature of Interviewer                 Signature of Complainant

                                         MAR  3   2006
                                         _____
                                         Date


                                         _____
                                         Location

# Exhibit 2

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 2</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

# ROBERT A. SPELKE

9721 Whitley Park Place
Bethesda, Maryland 20814
Home: (301) 493-4491
Office: (202) 353-3807

**EMPLOYMENT:**

**U.S. DEPARTMENT OF JUSTICE**
Criminal Division
Narcotics and Dangerous Drug Section (NDDS)
January 2003 – Present

*Trial Attorney*: Investigate and prosecute high-level command and control elements of international drug organizations. Break tightly compartmentalized structures of drug organizations through coordinated national and international approaches against criminal syndicates that are equally coordinated, international in scope, violent and well financed. Prepare provisional arrest warrants, extradition documents and request for foreign information pursuant to Mutual Legal Assistance Treaties (MLATS). Secure foreign evidence and prepare for admission in U.S. courts.

Lead attorney on *United States v. Kofferberg*, involving an Israeli drug smuggling organization and related money laundering activities. Utilized Summation and Sanction II software for trial presentation in gathering and organizing over 100 pieces of evidence, including business records, foreign recorded telephone conversations and money transfers. Recipient of monetary award for successful litigation of this case.

Investigated, indicted and completed extradition documents in *United States v. Ferguson*, part of Operation Busted Manatee, to disrupt transportation elements of drug trafficking organizations in Jamaica, the Bahamas and Florida. In *United States v. Justine Martone, et. al.*, investigated and prosecuted suppliers and distributors of chemical analogous over the internet.

Prepared and secured 18 U.S.C. Section 2307 orders to obtain electronic mail and subscriber information from Internet Service Providers. Secured court orders to obtain triangulation information for law enforcement elements to locate satellite telephones on vessels at sea.

**U.S. DEPARTMENT OF JUSTICE**
Drug Enforcement Administration (DEA)
Office of Chief Counsel, Domestic Criminal Law Section
1997 - 1998 – Attorney-Advisor
1998 – January 2003 – Associate Chief Counsel

*Associate Chief Counsel, Domestic Criminal Law Section*: After servicing 18 months as an Attorney-Adviser in the Domestic Criminal Law Section (CCM), assumed the position of Associate Chief Counsel, CCM on December 7, 1998. Managed the administrative and operational functions of CCM, which includes supervising six attorneys and support staff; ensuring the effective use of personnel and physical

1

resources; and reviewing and approving legal memoranda to the Chief Counsel, United States Attorney's Offices, and other key Department of Justice (DOJ) officials on DEA operations, policy and procedures. Participated in a specially formed working group commissioned by the DEA Administrator, as well as represented DEA in the drafting of the *DOJ Guidelines Regarding the Use of Confidential Informants*, January 8, 2001, which reviewed and revised both DEA and DOJ policies on handling and supervising confidential sources of information. Reviewed proposals to utilize sensitive investigative techniques, and a voting member of the Sensitive Activities Review Committee (SARC). Authorized the disclosure of DEA and DOJ documents and testimony by DEA personnel pursuant to 28 C.F.R. Part 16. Responsible for the disclosure of *Brady/Giglio* information on DEA personnel and confidential sources to assist prosecutors in meeting their constitutional obligations. Reviewed and commented on proposed legislation, and draft legislation that promotes DEA's investigative efforts. Informed the field on current legal trends and significant court decisions. Provided extensive legal instruction to Federal, state and local law enforcement officers, and to private professional organizations. Received three monetary awards for superior performance.

## U.S. DEPARTMENT OF JUSTICE
Office of the United States Attorney for the District of Columbia
1987-1997

**_Assistant U.S. Attorney_**: Served as a line assistant in the Appellate Division, Misdemeanor Trial, Felony Trial, Grand Jury, Violent Crime and Narcotics Sections and Homicide Unit. Was selected and served in a pilot project based on community prosecution in the Fifth Police District. While a member of the Narcotics Section, prosecuted narcotic and financial violations utilizing undercover agents, civilian informants and electronic surveillance. Completed over 50 jury trials and 20 non-jury trials in both Federal and Superior Court. As a senior assistant in the Grand Jury Section, investigated a variety of sensitive cases involving accusations of economic malfeasance and excessive force by police officers. Selected to train new assistants in trial advocacy.

Recipient of Special Achievement Awards for trial work in the felony drug rotation and Violent Crime Section. Received Certificate of Appreciation from the DEA for assistance with a multi-kilogram supplier of "crack" cocaine, and the seizure of almost $1,000,000 in assets.

Significant prosecutorial experience includes the trial of *United States v. Craig Barton* in Superior Court. Lead prosecutor in this highly publicized case. Investigated, indicted and secured a conviction for the death of one person and the stabbing of two others in Georgetown on Halloween night. In addition, investigated and presented to the grand jury 28 witnesses, including a medical expert, concerning the choke-hold strangulation death of a student at *Gallaudet University* by security guards.

2


Drafted briefs and presented oral arguments in the United States Court of Appeals for the District of Columbia and the District of Columbia Court of Appeals.

**U.S. DEPARTMENT OF JUSTICE**
Civil Rights Division
Special Litigation Section
1984-1987

_**Trial Attorney**_: Represented DOJ in complex litigation involving institutional reform.  Initiated investigations, litigation, settlement negotiations, and compliance efforts to protect the federal constitutional rights of institutionalized persons.  Participated in _United States v. City of Newark, New Jersey, et. al._, the discovery, preparation and 21-day trial challenging the conditions of confinement in a detention facility.  Completed the U.S. Department of Justice Trial Advocacy Program in civil litigation.

**AUGELLO, PEZOLD & HIRSCHMANN, P.C.**
Shippers National Freight Claim Council
Freight Users Association of Long Island
Huntington, New York
1981-1984

_**Associate**_: Drafted pleadings, motions and memoranda of law on both civil and criminal matters.  Conducted extensive research in the field of transportation law focusing on carrier's liability for loss, damage, and delay of goods while in transit.  Researched 1982 revision of book, <u>Freight Claims in Plain English</u>, and prepared first draft of book, <u>Transportation Forms and Agreements For Shippers and Carriers</u>.  Represented clients in court.

**ADMITTED TO PRACTICE:**
New York State Court
District of Columbia
United States Supreme Court

**EDUCATION:**
Hofstra University School of Law, Hempstead, New York
Juris Doctor, 1982
University of Miami, Coral Gables, Florida
Bachelor of Business Administration, 1979

# Exhibit 3

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 3</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

**DECLARATION OF CRAIG LAWRENCE**
**COMPLAINT OF DISCRIMINATION**
**AGENCY NO. USA-2006-00075 (hh)**

Preliminary Questions

1.      What is your full name?

Robert Craig Lawrence.

2.      What are your age, gender and date of birth?

60 years old; Male; ███████ 1945

3.      What your position title and grade?

Acting Chief, Civil Division

4.      What are your job duties?

Managing the operations of the Civil Division.

5.      How long have you been doing this particular job?

Since June 1, 2004

Accepted Issue:

6.      What is your response to the allegations made by Complainant?

No one in this Division was aware that Mr. Spelke was handicapped.  Our selections were made based on the person whom the Deputies collectively believed best fit the needs of the Division.

7.      Describe the process for selecting Civil Division AUSAs during the period July 1, 2004 through December 7, 2005, and state what information you communicated to the Complainant about the process.

Applications and resumes are screened, by the Chief and Deputy Chiefs, and those deemed by consensus to be worthy of an interview are scheduled for an interview by the Chief's paralegal.  There is generally no direct contact with an applicant before an interview.  As far as I know, there was no contact with Mr. Spelke before the interview except in scheduling his interview.

8.    Describe your entire involvement in the selection process in regard to Complainant's application to be hired as an AUSA in the Civil Division of the USAO-DC.

I had the last interview in his series of interviews in Civil. After the interview, I consulted John Fisher, then head of the Appellate Division, concerning his views of Mr. Spelke's work when he served in that Division, and I consulted Mary Lou Leary, long time AUSA, who served as Senior Counsel to the United States Attorney at that time. Both were equivocal in their response about Mr. Spelke. Based on his interview and the responses I received about his prior work, the Deputies and I did not consider Mr. Spelke as the first choice of applicants to recommend to the United States Attorney as the next Civil hire.

9.    Please state whether Complainant was or was not, in your view, qualified for the position of Civil Division AUSA and why.

Mr. Spelke was qualified based on his background, especially as a former AUSA here, and his education and his experience after he left the office.

10.    If you interviewed the complainant in connection with his application, please identify any statements he made which indicated that he might not have been an appropriate candidate for selection, and state the reason(s) for your concern(s) or view(s).

I asked Mr. Spelke, as I do all applicants I interview, What is your reason for wanting to leave [in this case] DEA? I'm looking for a statement in the answer about why the applicant wants to come to Civil. Mr. Spelke spoke eloquently about why he disliked the travel at DEA, and why he wanted to travel less, but he said nothing about wanting to come to Civil. Based on our crushing workload and shortage of people I believe that it is important to look for people want to come to Civil not just leave a less agreeable position.

11.    Were you the selecting official in regard to Complaint's application? If not, please identify the selecting official.

No, in Civil we operate by consensus; it is a group decision. In recommending an applicant to the U.S. Attorney for consideration, the Civil Chief and Deputies reach a consensus among the candidates on a top candidate, and send that name forward. Only the United States Attorney has authority to extend an offer.

12.    At what point and how did you become aware of the Complainant's age and disability status?

I do not know Mr. Spelke's age, and as far as I know, he is not disabled.

13.    Identify all persons selected as AUSAs and assigned to the Civil Division during the period July 1, 2004 through December 7, 2005.

Megan Rose; Mercedeh Momeni; Benton Peterson, John Truong; Katherine Konopka.

14.   Please provide the ages and dates of birth of the person identified in your answer to Questionnaire number 13 above.

29, ████████ , 1977; 38, ████████ 1968; 35, ████████ 1971; 36, ████████ , 1970; and 36, ████████ 1970.

15.   Please identify each actual or perceived physical or mental disability, if known, of all persons identified in your answer to Questionnaire number 13 above.

None.

16.   Please state whether you have any known physical or mental disabilities, actual or perceived.

None.

17.   For each person identified in your response to Questionnaire number 13 above, please identify whether and in what way each person's qualifications were superior to those of Complainant.

Every selected applicant expressed a strong desire to work in the Civil Division. Megan Rose was a selection from the pool of Honors Program Selectees who, because we needed attorneys and justified the selection, was assigned to Civil rather than Tax Division. Mercedeh Momeni had excellent academic credentials and excellent Title VII experience in New Jersey and she wanted to come to this office and take part in our employment practice. Benton Peterson had served as a Special AUSA for approximately a year and had done an excellent job for us, and he wanted to come back. Katherine Konopka, a former AUSA had excellent credentials and was serving at DOJ IG. She wanted to come to Civil and return to litigation. John Fisher, then Appellate Division Chief, spoke well of her writing and analytical skills.

18.   For each person identified in your response to Questionnaire number 13 above, if it is your contention that any such person was selected for reasons other than qualifications which were superior to Complainant's, state the reason(s) why each such person was selected instead of Complainant?

One additional element that I look for is how easy it will be to work with and supervise a particular applicant. I thought each would do well in that regard.

19.   State the total number of Civil Division AUSA vacancies which were available to be filled during the period July 1, 2004 through December 7, 2005.

During that period we never reached full strength, largely due to budget reasons; we had 3 or 4 vacancies throughout that period.

20.    Please state the total number of individuals from whom the USAO-DC received applications, resumes or any other written requests to be considered for employment as an AUSA with the USAO-DC during the period July 1, 2004 thru December 7, 2005.

The total number of individuals from whom the Civil Division received applications, resumes or any other written requests were 95.

21.    For all such persons identified in your response to Questionnaire number 20 above, please state the total number of applicants who: a) were at least forty (40) years of age; and/or b) identified that they had a physical or mental disability.

Age and disability status are not questions that we ask of applicants and therefore, we have no way of ascertaining that information.

22.    Did you communicate with anyone to obtain a reference or other background information in connection with Complainant's application?  If so, please identify for each such person: a) the name and title of the individual; and b) the precise information provided by such individual.

There was no communications other than those mentioned earlier, and there was no effort to speak with any of Mr. Spelke's proffered references.

23.    For each person identified in your response to questions number 22 above, please state whether and how the information provided to you affected your decision on whether to select the Complainant for an AUSA position.

A positive response from the Appellate Division is a boost for a candidate we are considering who is serving or has served in our office.

24.    State the reason(s) why the Complainant was not offered a position as a Civil Division AUSA.

There was a consensus among the Deputies that those who were sent forward to the United States Attorney were the best candidates to fill a vacant Civil slot.


**PURSUANT TO 28 U.S.C. § 1746:**

I, R. Craig Lawrence, declare under penalty of perjury that the foregoing responses, including those contained in any attached or corresponding Continuation Sheet(s), are true and correct.

**March 20, 2006**
**DATE**                                                    R. CRAIG LAWRENCE

**PRIVACY ACT NOTICE TO EEO COMPLAINT WITNESSES**
**(OTHER THAN COMPLAINANT)**
**FOR DISCRIMINATION COMPLAINT INVESTIGATIONS**

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613-1614; Title 5, United States Code, Sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

_____          _____
Signature of Interviewer                  Signature of Witness

                                          _____
                                          Date  16 Mar 06

                                          _____
                                          Location

# Exhibit 4

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 4</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

# DECLARATION OF DANIEL F. VAN HORN
## COMPLAINT OF DISCRIMINATION
### AGENCY NO. USA-2006-00075 (HH)

<u>Preliminary Questions</u>

1. What is your full name?

   DANIEL FRANKLIN VAN HORN

2. What is your age, gender and date of birth?

   I am 55 years old.  I am male.  My date of birth is 
   1951.

3. What is your position title and grade?

   I am an Assistant United States Attorney.  This position is not a
   General Schedule position and so does not have a grade.

4. What are your job duties?

   I am currently a Deputy Chief in the Civil Division of the United
   States Attorney's Office in Washington, D.C.  My principal job
   duties involve supervising other Assistant United States Attorneys
   in conducting defensive civil litigation and assisting the Civil Chief
   in managing of the Division.  I am also principal counsel for the
   defendant in certain cases being handled by the Division.

5. How long have you been doing this particular job.

   I have been an Assistant United States Attorney since 1992.  I have
   been a Deputy Chief in the Civil Division since October 10, 1998.

<u>Accepted Issue:</u>

6. What is your response to the allegations made by Complainant?

   Mr. Spelke was not discriminated against based on his alleged
   physical disability or his age.  Other applicants were judged to be
   better qualified for selection as Assistant United States Attorneys
   in the Civil Division.  This decision was not motivated either by
   the applicants' disability status or by the applicants' ages.

Initial *Dvh*                          Page 1 of 5

7.  Describe the process for selecting Civil Division AUSAs during the period July 1, 2004 through December 7, 2005, and state what information you communicated to the Complainant about that process.

The process for selecting Civil Division AUSAs during the period July 1, 2004 through December 7, 2005 was a follows:

First, the applicant's resume and any other material submitted with the resume is circulated for review by the attorney supervisors, each of whom individually indicates whether he or she believes the applicant should be interviewed.

Second, after considering the recommendations from the other attorney supervisors, the Civil Chief decides which applicants to invite for interviews.

Third, applicants who are invited and who elect to interview are normally interviewed by one of the Deputy Chiefs, by a panel that consists of at least one attorney supervisor and one or more non-supervisory AUSAs, and by the Civil Chief. The individual interviews with a Deputy Chief and the Civil Chief typically last about 30 minutes; the panel interview typically lasts about 45 minutes. The three interviews are conducted in succession on a single day, with the Civil Chief interview being the last one. The Appellate Counsel may participate in the interviews either in addition to or in lieu of one of the Deputy Chiefs.

Fourth, when the Civil Division is authorized to fill an opening by the United States Attorney, the Civil Division attorney supervisors meet to discuss which candidate(s) to refer to the United States Attorney for his consideration. Based on the views expressed during that discussion, the Civil Chief decides which candidate(s) to refer.

Fifth, I believe, although I have no first-hand knowledge, that referred candidates are offered an opportunity to interview with the United States Attorney and members of his front office staff, after which the United States Attorney decides whether to extend a job offer, subject to completion of a satisfactory reference and background check. Only the United States Attorney has authority to hire AUSAs.

Initial _Rerh_                    Page 2 of 5

I do not recall discussing the selection process in any detail with Mr. Spelke, although I may have mentioned that the United States Attorney decides when AUSA positions in the Civil Division may be filled, and has the ultimate hiring authority for those positions.

8.  Describe your entire involvement in the selection process in regard to Complainant's application to be hired as an AUSA in the Civil Division of the USAO-DC.

I reviewed Mr. Spelke's application after it was received by the Civil Division and recommended that he be interviewed. I interviewed Mr. Spelke individually for approximately 30 minutes as part of his series of interviews in the Civil Division. I participated in the discussions among the Civil Division attorney supervisors about which candidates to refer to the United States Attorney for further consideration, and I concurred in the decision not to refer Mr. Spelke at that time.

9.  Please state whether Complainant was or was not, in your view, qualified for the position of Civil Division AUSA and why.

I believe that Mr. Spelke was and is qualified to be an AUSA in the Civil Division; however, we receive applications from many qualified candidates and, due to staffing and budget limitations, are able to hire only a few of them. Mr. Spelke was not referred to the United States Attorney for further consideration because other candidates were deemed to be better qualified than he was.

10. Please state whether you have any known physical or mental disabilities, actual or perceived.

To the best of my knowledge, I have no actual or perceived physical or mental disabilities.

11. If you interviewed the Complainant in connection with his application, please identify any statements he made which concerned you or indicated to you that he was not an appropriate candidate for selection, and state the reason(s) for your concern(s) or view(s).

Mr. Spelke was and is an "appropriate" candidate for selection; however, I was concerned by his response when I asked him why he wanted by join the Civil Division of our Office. Mr. Spelke

Initial *[signature]*                     Page 3 of 5

responded that he was seeking this position so that he would not have to travel out of town, which he explained was often required in his present job. I was concerned by this response because it indicated that Mr. Spelke's motivation was to leave his present job, not to come to the Civil Division. Although this distinction may be a subtle one, I consider it to be of great significance. Even without frequent out of town travel, being an AUSA in the Civil Division is a very demanding job, and attorneys who are not highly motivated to be litigators in the Civil Division are likely to become quickly disenchanted by the volume and pace of the work. In view of Mr. Spelke's stated reason for wanting to join the Civil Division, I was not convinced that he had a genuine interest in and was fully committed to doing the kind of work that he would be expected to do if he were hired.

12.  Were you the selecting official in regard to Complaint's application? If not, please identify the selecting official.

I was not the selecting official. The decision not to refer Mr. Spelke to the United States Attorney for further consideration at that time was made by R. Craig Lawrence, Acting Chief of the Civil Division. I participated in the discussions that led to that decision, which reflected the consensus view of the attorney supervisors in the Civil Division, and in which I concurred.

13.  At what point and how did you become aware of the Complainant's age and disability status?

I did not become aware of Mr. Spelke's age or disability status until after he complained about not being hired. I presume that information on his resume could be used to derive or estimate his age; however, I made no attempt to do so because age was not a relevant factor in consideration of his application.

14.  Did you communicate with anyone to obtain a reference or other background information in connection with Complainant's application? If so, please identify for each such person: a) the name and title of the individual; and b) the precise information provided by such individual.

I did not communicate with anyone to obtain a reference or other background information in connection with Mr. Spelke's application.

Initial *leel*                          Page 4 of 5

15.    Why was the Complainant not offered a position as a Civil
       Division AUSA?

       Mr. Spelke was not referred to the United States Attorney for
       further consideration because the Civil Division supervisors had
       concerns about his motivation for seeking a position as a Civil
       Division AUSA.  In particular, based on his interviews, the Civil
       Division attorney supervisors were concerned that Mr. Spelke did
       not have a genuine interest in and was not fully committed to doing
       the kind of work he would be expected to do if he were hired, but
       was primarily interested in avoiding the frequent out of town travel
       that was required in his present job.

**PURSUANT TO 28 U.S.C. § 1746:**

    **I, Daniel F. Van Horn, declare under penalty of perjury that the foregoing responses
are true and correct.**

_March 16, 2006_
_____
**DATE**

_Daniel F. Van Horn_
_____
**Daniel F. Van Horn**

### PRIVACY ACT NOTICE TO EEO COMPLAINT WITNESSES
### (OTHER THAN COMPLAINANT)
### FOR DISCRIMINATION COMPLAINT INVESTIGATIONS

#### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

#### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613-1614; Title 5, United States Code, Sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

#### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

#### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

_____
Signature of Interviewer

_____
Signature of Witness

_____
3/16/06
Date

_____
Washington, D.C.
Location

# Exhibit 5

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 5</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

## QUESTIONNAIRE

### Complaint of Discrimination
### ROBERT ANDREW SPELKE
### AGENCY NO. USA-2006-00075 (HH)

**I.**    <u>NAME OF WITNESS:</u>    **Doris Coles-Huff**
                                   **Assistant United States Attorney**
                                   **U.S. Attorney's Office, District of Columbia**

**II.**    <u>Issue:</u>    Whether management officials of the United States Attorney's Office for the District of Columbia (USAO-DC) allegedly discriminated against Complainant, Robert Andrew Spelke, based on his physical disability (Cancer), age (D.O.B. 7/11/1957), and/or perceived disability, when he was not selected for the position of Assistant United States Attorney (AUSA) in the Civil Division on December 7, 2005.

### III. <u>Questions:</u>

<u>Preliminary Questions</u>

1.    What is your full name?

    Doris Denise Coles-Huff

2.    What are your age, gender and date of birth?

    45, /60

3.    What are your position title and grade?

    Deputy Chief, Civil Division

4.    What are your job duties?

    I supervise civil attorneys and support staff and conduct administrative matters related to the representation of the United States, its officers and agencies, in civil suits brought in the District of Columbia or otherwise assigned to this District.

**QUESTIONNAIRE OF DORIS COLES-HUFF**
**AGENCY NO. USA-2006-00075 (HH)**

> 5.    How long have you been doing this particular job?
>
>    Approximately 5 years.

Accepted Issue:

> 6.    What is your response to the allegation made by Complainant?
>
>    Mr. Spelke was not discriminated against on the basis of disability, age, or otherwise when he was not selected for the position of Assistant United States Attorney (AUSA) in the Civil Division on December 7, 2005.
>
> 7.    Describe your entire involvement in the selection process in regard to Complainant's application to be hired as an AUSA in the Civil Division of the USA0-DC.
>
>    I participated in a panel interview of the applicant, along with another supervisor and a line attorney from the Civil Division. The interview lasted about one hour. The panel asked questions of the applicant and responded to any questions posed by the applicant. I later participated in a discussion among Civil Division supervisors to determine which, if any, recently interviewed applicants (including the Complainant) would be referred for a follow-up interview with the United States Attorney and extended a job offer.
>
> 8.    Please state whether Complainant was or was not, in your view, qualified for the position of Civil Division AUSA and why.
>
>    The applicant was qualified for the position of Civil Division AUSA. He had previously served as a Criminal Division AUSA. He had sufficient (2 or more) post law school graduation years of experience. He had prior litigation experience. He was articulate and poised and it appeared that he would conduct himself appropriately and effectively in a courtroom. He seemed to be familiar with or capable of readily learning the Rules of Civil Procedure.

**QUESTIONNAIRE OF DORIS COLES-HUFF**
**AGENCY NO. USA-2006-00075 (HH)**

9.      If you interviewed the Complainant in connection with his
        application, please identify any statement (s) he made which
        concerned you or otherwise indicated that he was not an
        appropriate candidate for selection, and state the reason (s) for your
        concern or view.

        I was concerned that rather than expressing an interest in working for the
Civil Division, the applicant expressed that he wanted to escape the travel
demands of his current position.  I was also concerned about the level of recent
written work in civil proceedings.

10.     Please indicate whether you have a known physical or mental
        disability, whether actual or perceived.

        No.

11.     At what point and how did you become aware of the
        Complainant's age and disability status?

        I learned the Complainant's age from this questionnaire.  I learned during
a Civil Division supervisory meeting that the Complainant had alleged that he was
not selected as a Civil Division AUSA due to his age and disability, and that the
alleged disability related to the fact that he previously had been diagnosed with
cancer.

12.     Did you communicate with anyone to obtain a reference or other
        background information in connection with Complainant's
        application?  If so, please identify for each such person: a) the
        name and title of the individual; and b) the precise information
        provided by such individual.

        No.

**QUESTIONNAIRE OF DORIS COLES-HUFF**
**AGENCY NO. USA-2006-00075 (HH)**

13.    Why was the Complainant not selected for a position as a Civil
       Division AUSA?

       The Complainant was not considered to be the best qualified applicant
available for appointment at the time.  Other applicants had more current and
related civil experience, and more extensive writing experience and pre-trial
discovery experience.  Further, other applicants  expressed an interest in working
in the Civil Division, rather than a motivation to leave their current positions.

**Pursuant to 28 U.S.C. § 1746:**

       **I Doris Coles-Huff, declare under penalty of perjury that the foregoing responses,**
**including those contained in any attached or corresponding Continuation Sheet(s) are true**
**and correct.**

3/16/06
DATE                                      Doris Coles-Huff

*PRIVACY ACT NOTICE TO EEO COMPLAINT WITNESSES*
*(OTHER THAN COMPLAINANT)*
*FOR DISCRIMINATION COMPLAINT INVESTIGATIONS*

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613-1614; Title 5, United States Code, Sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal.  This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal.  The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available.  Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

_____
Signature of Interviewer

_____
Signature of Witness

3/16/06
Date

USAO-DC
Location

# Exhibit 6

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 6</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

# QUESTIONNAIRE

## COMPLAINT OF DISCRIMINATION
## ROBERT ANDREW SPELKE
## AGENCY NO. USA-2006-00075 (HB)

I. **NAME OF WITNESS:**        LISA GOLDFUSS *Goldfluss*
                              **Assistant United States Attorney**
                              **U.S. Attorney's Office, District of**
                              **Columbia**

II. **ISSUE:**        Whether management officials of the United States
                     Attorney's Office for the District of Columbia
                     (USAO-DC) allegedly discriminated against
                     Complainant, Robert Andrew Spelke, based on his
                     physical disability (Cancer), age (D.O.B.
                     7/11/1957), and/or perceived disability, when he
                     was not selected for the position of Assistant
                     United States Attorney (AUSA) in the Civil
                     Division on December 7, 2005.

III. **QUESTIONS**

**Preliminary Questions**

1.    What is your full name? *Lisa Sheri Goldfluss*

2.    What are your age, gender and date of birth? *49;* ▮▮▮▮ *-56*

3.    What are your position title and grade? *Assistant U.S. Attorney*

4.    What are you job duties? *Litigating civil cases on behalf of the federal government*

5     How long have you been doing this particular job?
                                              *Almost 10 years.*

**Accepted Issue:**

6.    What is your response to the allegations made by
      Complainant? *I don't know the answer, but I would doubt strongly that such discrimination occurred.*

7.    Describe your entire involvement in the selection
      process in regard to Complainant's application to be
      hired as an AUSA in the Civil Division of the USAO-DC.

      *I interviewed him with one other interviewer.*

1

*Goldfuss*

**DECLARATION OF LISA ~~GOLDFUSS~~**
**AGENCY NO. USA-2006-00075 (HH)**

8.  Please state whether Complainant was or was not, in your view, qualified for the position of Civil Division AUSA and why.  *Do not recall*

9.  If you interviewed the Complainant in connection with his application, please identify any statements he made which concerned you or indicated to you that he was not an appropriate candidate for selection, and state the reason(s) for your concern or view. *Do not recall.*

10. At what point and how did you become aware of the Complainant's age and disability status? *When he told me* *(after the non-selection)*

11. Please indicate whether you have a known physical or mental disability, whether actual or perceived.
    *Don't have.*

12. Why was the Complainant not selected for a position as Civil Division AUSA?
    *I don't know.*

**PURSUANT TO 28 U.S.C. § 1746:**
                *Goldfuss*

    I, Lisa ~~Goldfuss~~, declare under penalty of perjury that the foregoing responses, ~~including those contained in any attached or corresponding Continuation Sheet(s)~~, are true and correct. *log*

_____3-15-06_____                    _____Lisa Sm_____
      **DATE**                          **Lisa ~~Goldfuss~~**
                                          *Goldfuss*

                                    2

FROM U. S. ATTTORNEY'S        OFFICE                (MON) 3. 20' 06 12:57/ST. 12:56/NO. 4861391918 P   2

### PRIVACY ACT NOTICE TO EEO COMPLAINT WITNESSES
### (OTHER THAN COMPLAINANT)
### FOR DISCRIMINATION COMPLAINT INVESTIGATIONS

#### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

#### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613-1614; Title 5, United States Code, Sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

#### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

#### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

_____          _____
Signature of Interviewer                       Signature of Witness

                                              3-18-06
                                         _____
                                              Date

                                              Washington DC
                                         _____
                                              Location

# Exhibit 7

Spelke v. Gonzales, Civil No.  06-1887 (RJL)

Exhibit 7 to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

**DECLARATION OF KENNETH L. WAINSTEIN**
**COMPLAINT OF DISCRIMINATION**
**AGENCY NO. USA-2006-00075 (HH)**

Preliminary Questions

    1. What is your full name?

**Kenneth Leonard Wainstein**

    2. What are your age, gender and date of biirth?

**44, male,** ▮ **'62**

    3. What is your position title?

**United States Attorney for the District of Columbia**

Accepted Issue:

    4. What is your response to the allegations made by Complainant?

**Complainant's allegations are unfounded.**

    5. Please describe your entire involvement in the selection process in regard to Complainant's application to be hired as an AUSA in the Civil Division of the USAO-DC.

**None.**

    6. Please state whether Complainant was or was not, in your view, qualified for the position of Civil Division AUSA and why.

**I am not familiar with Complainant's qualifications and did not participate in the interview or selection process. Accordingly, I do not have a basis to render an opinion on this question.**

    7. At what point and how did you become aware of the Complainant's age and disability status?

**I became aware when we were contacted by Olga MacLean of the Executive Office**

Initial ⟍⟋⟍⟋       Page 1 of 2

**DECLARATION OF KENNETH L. WAINSTEIN**
**AGENCY NO. USA-2006-00075 (HH)**

for United States Attorneys EEO staff and advised that Mr. Spelke had filed an informal EEO complaint.

8. Please state whether you have any known physical or mental disabilities, actual or perceived.

**None.**

9. Please state the reason(s) why the Complainant was not offered a position as a Civil Division AUSA?

**I was not involved in the selection process, so I do not have a basis to answer this question.**

**PURSUANT TO 28 U.S.C. § 1746:**

I, Kenneth L. Wainstein, declare under penalty of perjury that the foregoing responses, including those contained in any attached or corresponding Continuation Sheet(s), are true and correct.

_____3/17/06_____
**DATE**

_____
**Kenneth L. Wainstein**

# QUESTIONNAIRE

## COMPLAINT OF DISCRIMINATION
## ROBERT ANDREW SPELKE
## AGENCY NO.  USA-2006-00075 (HH)

**I. NAME OF WITNESS:**                    Kenneth L. Wainstein
                                           United States Attorney
                                           U.S. Attorney's Office, District of Columbia

**II.  ISSUE:**              Whether management officials of the United States Attorney's Office for
                             the District of Columbia (USAO-DC) allegedly discriminated against
                             Complainant, Robert Andrew Spelke, based on his physical disability
                             (Cancer), age (D.O.B. 7/11/1957), and/or perceived disability, when he
                             was not selected for the position of Assistant United States Attorney
                             (AUSA) in the Civil Division on December 7, 2005.

## III. QUESTIONS

Preliminary Questions

   1.  What is your full name?

   **Kenneth Leonard Wainstein**

   2.  What are your age, gender and date of birth?

   **44, male,          62**

   3.  What are your position title and grade?

   **United States Attorney for the District of Columbia**

Accepted Issue:

   6.  What is your response to the allegations made by the Complainant?

   **Complainant's allegations are unfounded.**

   7.  Describe your entire involvement in the selection process in regard to Complainant's
   application to be hired as an AUSA in the Civil Division of the USAO-DC.

QUESTIONNAIRE OF KENNETH L. WAINSTEIN
AGENCY NO. USA-2006-00075 (HH)

None.

8.  Please state whether Complainant was or was not, in your view, qualified for the
position of Civil Division AUSA and why.

**I am not familiar with Complainant's qualifications and did not participate in the
interview or selection process.  Accordingly, I do not have a basis to render an
opinion on this question.**

9.  At what point and how did you become aware of the Complainant's disability status?

**I became aware when we were contacted by Olga MacLean of the Executive Office
for United States Attorneys EEO staff and advised that Mr. Spelke had filed an
informal EEO complaint.**

10.  Please state whether you have any known physical or mental disabilities, actual or
perceived.

**None.**

11.  State the reason(s) why the Complainant was not offered a position as a Civil
Division AUSA.

**I was not involved in the selection process so I do not have a basis to answer this
question.**

PURSUANT TO 28 U.S.C. § 1746:

        I, Kenneth L. Wainstein, declare under penalty of perjury that the foregoing
responses, including those contained in any attached or corresponding Continuation
Sheet(s), are true and correct.

_____3/17/06_____          _____
        DATE                            Kenneth L. Wainstein

2

03/20/2006 10:19 FAX 2025141104          EOUSA/LCO                              ☑002

### PRIVACY ACT NOTICE TO EEO COMPLAINT WITNESSES
### (OTHER THAN COMPLAINANT)
### FOR DISCRIMINATION COMPLAINT INVESTIGATIONS

#### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

#### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613-1614; Title 5, United States Code, Sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

#### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

#### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

_____          _____
Signature of Interviewer                          Signature of Witness

                                                        3/20/06
                                                   _____
                                                   Date

                                                   U.S. Attorney's Office - P.C
                                                   _____
                                                   Location

# Exhibit 8

Spelke v. Gonzales, Civil No. 06-1887 (RJL)

Exhibit 8 to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

# QUESTIONNAIRE

## COMPLAINT OF DISCRIMINATION
### ROBERT ANDREW SPELKE
### AGENCY NO.  USA-2006-00075 (HH)

**I. NAME OF WITNESS:**    **Monty Wilkinson**
                          **Executive Assistant United States**
                          **Attorney for Management, U.S.**
                          **Attorney's Office, District of Columbia**

**II. ISSUE:**    Whether management officials of the United States Attorney's Office for
                  the Distreict of Columbia (USAO-DC) allegedly discriminated against
                  Complainant, Robert Andrew Spelke, based on his physical disability
                  (Cancer), age (D.O.B. 7/11/1957), and/or perceived disability, when he
                  was not selected for the position of Assistant United States Attorney
                  (AUSA) in the Civil Division on December 7, 2005.

## III. QUESTIONS

Preliminary Questions

   1.  What is your full name?

   **Robert Montague Wilkinson**

   2.  What are your age, gender and date of birth?

   **45, male, ████ /61**

   3.  What are your position title and grade?

   **Executive Assistant United States Attorney for Management - AD-0905**

   4.  What are your job duties?
   **I am responsible for the day-to-day management of the office's administrative
   functions, which consists of Human Resources, Budget and Finance, Support
   Services, Information Technology and the Law Library.  I also serve on the
   Attorney Hiring Committee for applicants to our criminal assignments and
   supervise the Office's volunteer internship program.**

   5.  How long have you been doing this particular job?

   **Approximately 4.5 years.**

**QUESTIONNAIRE OF MONTY WILKINSON**
**AGENCY NO. USA-2006-00075 (HH)**

Accepted Issue:

6.  What is your response to the allegations made by the Complainant?

**Complainant's allegations are unfounded.**

7.  Describe your entire involvement in the selection process in regard to Complainant's application to be hired as an AUSA in the Civil Division of the USAO-DC.

**None.**

8.  Please state whether Complainant was or was not, in your view, qualified for the position of Civil Division AUSA and why.

**I am not familiar with Complainant's qualifications and did not participate in the interview or selection process.  Accordingly, I do not have a basis to render an opinion on this question.**

9.  Please identify the selecting official in regard to Complainant's application.

**Acting Civil Division Chief R. Craig Lawrence.**

10.  At what point and how did you become aware of the Complainant's disability status?

**I became aware when we were contacted by Olga MacLean of the Executive Office for United States Attorneys EEO staff and advised that Mr. Spelke had filed an informal EEO complaint.**

11.  Identify all persons selected as AUSAs and assigned to the Civil Division during the period July 1, 2004, through December 7, 2005.

**John F. Henault**
**EOD- 9/7/04**

**Andrea W. McBarnette**
**EOD - 9/7/04**

**Mercedeh Momeni**
**EOD - 3/20/05**

2

**QUESTIONNAIRE OF MONTY WILKINSON
AGENCY NO. USA-2006-00075 (HH)**

> **John C. Truong**
> **EOD - 4/17/05**
>
> **Benton Peterson**
> **EOD - 5/1/05**
>
> **Megan Rose**
> **EOD - 7/10/05 (Converted to USAO-DC employee)**
>
> **Kathleen Konopka**
> **EOD - 8/21/05**

12.  Please provide the ages and dates of birth of the persons identified in your answer to Questionnaire number 11 above.



13.  Please identify each actual or perceived physical or mental disability, if known, of all person identified in your answer to Questionnaire number 11 above.

**Unknown.**

3

**QUESTIONNAIRE OF MONTY WILKINSON**
**AGENCY NO. USA-2006-00075 (HH)**

14. Please state whether you have any known physical or mental disabilities, actual or perceived.

**None.**

15. State the total number of Civil Division AUSA vacancies which were available to be filled during the period July 1, 2004 through December 7, 2005.

**Three or four at any given time; however, our ability to fill vacancies was budget-driven so vacancies were not filled for substantial periods.**

16. Please state the total number of individuals from whom the USAO-DC received applications, resumes or similar written request to be considered for employment as an AUSA during the period July 1, 2004 December 7, 2005.

**Principal Assistant United States Attorney Channing D. Phillips oversees the Criminal AUSA hiring program and is better equipped to answer this question.**

17. For all such persons identified in your response to Questionnaire number 16 above, please state the total number of applicants who: a) were at least forty (40) years of age; and/or b) identified that they had a physical or mental disability.

**I do not have a basis to answer this question.**

18. Did you communicate with anyone to obtain a reference or other background information in connection with Complainant's application? If so, please identify for each such person: a) the name and title of the individual; and b) the precise information provided by such individual.

**No. N/A.**

19. State the reason(s) why the Complainant was not offered a position as a Civil Division AUSA.

**I was not involved in the selection process so I do not have a basis to answer this question.**

**QUESTIONNAIRE OF MONTY WILKINSON**
**AGENCY NO. USA-2006-00075 (HH)**


**PURSUANT TO 28 U.S.C. § 1746:**

     **I, Monty Wilkinson, declare under penalty of perjury that the foregoing responses, including those contained in any attached or corresponding Continuation Sheet(s), are true and correct.**

    3·8·06

—————————————————       —————————————————
       **DATE**                                   **Monty Wilkinson**

5

*PRIVACY ACT NOTICE TO EEO COMPLAINT WITNESSES*
*(OTHER THAN COMPLAINANT)*
*FOR DISCRIMINATION COMPLAINT INVESTIGATIONS*

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613-1614; Title 5, United States Code, Sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

_____
**Signature of Interviewer**

_____
**Signature of Witness**

3·8·06
_____
**Date**

EOUSA - General Counsel's Office - Wash., DC
_____
**Location**

# Exhibit 9

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 9</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

*Shelia's Copy*

# EEO INTAKE FORM

Date __10/28/05__

| | |
|---|---|
| Name __Mr. Robert Spelke__ | ☑ Employee |
| Address/District __9721 Whitley Park Place__ | ☑ Applicant |
| Phone Number __Bethesda MD  20814__ | ☐ Contractor |
| __Phone 202 - 504 353 -1431__ | ☐ Other |

**PURPOSE OF INCOMING CALL OR VISIT**

☐  Seeking general information. [Remind of 45 day filing period]

☑  Wishes to request EEO Counseling at this time. [Refer to EEO website at www.usa.doj.gov/staffs/eeo]

☐  Other.  Please specify:

_Applied to an AUSA position with DC USAO._
_Keeps sending letters with no reply - asking about position._
_2 weeks ago found out that a younger male was hired._

**SERVICES RENDERED**

_Explained EEO Process. Faxed Pre Complaint_
_package since he couldn't access our website._
_He is a DOJ employee._

**FOLLOW-UP NEEDED**

_Assign Counselor._

_Olga MacLean_  5: 45 pm, Oct, 28/05

**EEO STAFF MEMBER**

# Exhibit 10

Spelke v. Gonzales, Civil No. 06-1887 (RJL)

Exhibit 10 to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Equal Employment Opportunity Staff

*National Place Building, Suite 524*
*1331 Pennsylvania Avenue, NW*
*Washington, DC 20530*

*(202) 514-3982*
*FAX (202) 305-1431*

October 28, 2005

<u>**SENT VIA FACSIMILE**</u>: 202-514-0483

Mr. Robert Spelke
9721 Whitley Park Place
Bethesda, MD 20814

Dear Mr. Spelke:

The Executive Office for United States Attorneys (EOUSA), Equal Employment Opportunity (EEO) Staff acknowledges your initial contact of October 28, 2005 in which you notified us of your interest in filing a Pre-Complaint claim and receiving EEO counseling.

Accordingly, I have enclosed the following documents for your use: (1.) Pre-Complaint form; (2.) EEO Complaint Processing Summary; (3.) Waiver of Anonymity form; (4.) Notice of Rights and Responsibilities; and (5.) the revised procedural regulations on federal sector employment discrimination complaints at 29 C.F.R. § 1614.

If you wish to waive your right to anonymity during your informal counseling stage, please sign the enclosed Waiver of Anonymity form and provide it to your EEO Counselor, with a copy to this office. Once I receive your completed forms, a counselor will be assigned to counsel your pre-complaint. Please fax your forms to me at fax number **(202) 305-1431 within 5 calendar days.**

If you should have any questions, please feel free to contact me at (202) 514-3982.

Sincerely,

*Olga M. MacLean*
Olga M. MacLean
Equal Employment Opportunity Specialist

Enclosures

# Exhibit 11

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 11</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

# Memorandum

| Subject | Date |
|---|---|
| **NOTICE OF FINAL INTERVIEW AND RIGHT TO FILE A FORMAL COMPLAINT** | December 6, 2005 |

| To | From |
|---|---|
| Robert A. Spelke<br>Aggrieved Person | *Olga M. MacLean*<br>Olga M. MacLean<br>Equal Employment<br>Opportunity Specialist |

This will serve as notice that Ms. Olga M. MacLean, EEO Counselor has conducted the final counseling interview, as of December 6, 2005, in connection with the administrative processing of the Pre-Complaint of Discrimination that you submitted to the Executive Office for United States Attorneys, Equal Employment Opportunity (EEO) Staff.

Please be informed that because your Pre-complaint of Discrimination has not been resolved to your satisfaction, you are now entitled to file an individual or class-based discrimination complaint based on race, color, religion, sex, sexual orientation, national origin, physical and/or mental disability, age, status as a parent, protected genetic information, and/or reprisal. If you wish to file a formal complaint, it must be filed either in person or by facsimile **within fifteen (15) calendar days after your receipt of this notice**. The formal complaint must be in writing, on the proper form, and submitted to the following official who is authorized to receive employment discrimination complaints:

> **Juan E. Milanés**
> **Assistant Director**
> **Equal Employment Opportunity Staff**
> **Executive Office for United States Attorneys**
> **Department of Justice**
> **FAX: (202) 305-1431**
>
> **IN PERSON, MAIL, OR COURIER DELIVERY:**
> **National Place Building**
> **1331 Pennsylvania Avenue, N.W., Suite 524**
> **Washington, D.C.  20530-0001**

A formal complaint shall be deemed timely if it is received or postmarked **before** the expiration of the 15-day filing period, or, in the absence of a legible postmark, if it is received by mail within five (5) days of the expiration of the filing period. Attached you will find a copy of the Complaint of Discrimination form that must be used when filing a formal complaint.

-2-

The complaint must be specific and contain only those issues either specifically discussed with me or issues that are "like or related to" the issues that you discussed with me.  It must also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same claims.

If you retain an attorney or any other person to represent you, you or your representative must immediately notify the Assistant Director of the EEO Staff, Juan E. Milanés, at the above-listed address.

Once the EEO Staff receives your formal complaint, you and/or your representative will receive a written acknowledgment of your formal complaint, containing important information about your rights and responsibilities.

Attachments:   Notice of Rights and Responsibilities
               Formal Complaint Form
               Formal Complaint Form Instructions



**U.S. Department of Justice**

Executive Office for United States Attorneys

| | | |
|---|---|---|
| Equal Employment Opportunity Staff | *Suite 524, National Place Building* | *(202) 514-3982* |
| | *1331 Pennsylvania Avenue N.W.* | *FAX (202) 305-1431* |
| | *Washington, DC 20530* | |

Subject:  **NOTICE OF RIGHTS AND RESPONSIBILITIES OF INDIVIDUALS FILING FORMAL COMPLAINT OF DISCRIMINATION**

Reference:     Title 29 Code of Federal Regulations §1614.106

On November 9, 1999, the Equal Employment Opportunity Commission (EEOC) regulations governing the processing of complaints of employment discrimination by federal applicants and employees were revised. A copy of the revised provisions of 29 C.F.R. §1614 is enclosed as part of the informal pre-complaint package. It is important that you understand the following rights and responsibilities, as they may affect the way in which your complaint is processed.

**A.  RIGHT TO REPRESENTATION**

You have the right to representation throughout the complaint process, including the pre-complaint stage. The right to representation includes the right to be accompanied and advised by a representative of your choice.

If you obtain a representative, you must provide the EEO Staff with **immediate written notice** of the representative's name, address, telephone and facsimile numbers. Once this notice is received by this office, all official correspondence shall be with the representative, with copies provided to you. If you designate an attorney as your representative, service of documents and decisions shall be made upon your attorney. Thus, time frames which begin upon receipt of materials shall be computed from the time of receipt of these materials by your attorney.

**B.  RIGHT TO OFFICIAL TIME**

You have the right to a reasonable amount of official time to prepare your complaint.

-2-

C.    **RIGHT TO BE FREE FROM REPRISAL**

You have the right to be free from restraint, interference, coercion, harassment, discrimination, and reprisal in presenting or processing a complaint of discrimination. If you believe discriminatory action(s) are taken against you in reprisal/retaliation for your filing an EEO complaint, or for participating in other protected EEO activity, you have the right to file a complaint alleging reprisal.

D.    **RIGHT TO FILE A FORMAL COMPLAINT**

You have the right to file a formal complaint within 15 calendar days of receipt of the written notice. However, only the matter(s) raised in the informal counseling stage, or claims that are "like or related to" those claims, may be the subject of a subsequent formal complaint or amendments to that complaint. In addition, your formal complaint must be sufficiently precise to identify you and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint. It must also contain a telephone number and address where you or your representative can be contacted. It must be signed by the complainant and/or complainant's attorney.

E.    **RIGHTS UNDER A NEGOTIATED GRIEVANCE PROCEDURE**

If you are an employee covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, you have the right to file **either** an EEO complaint under 29 C.F.R. §1614, **or** a grievance under the negotiated grievance procedure, **but not both**. An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An election to proceed under §1614 is indicated only by the filing of a written formal complaint with the EEO Staff.

If you file a discrimination complaint under 29 C.F.R. §1614, you may not thereafter file a grievance on the same matter.

If your collective bargaining agreement allows allegations of discrimination to be raised as part of a grievance, and you file such a grievance, you **must** raise the allegations of discrimination in the grievance. You **will not** be allowed to later file an EEO discrimination complaint on the same issue.

F.    **RIGHT TO FILE A MIXED CASE COMPLAINT**

A mixed case complaint is an employment discrimination complaint filed with a Federal agency based on race, color, religion, sex, national origin, age or disability, related to, or stemming from, an

-3-

action that can be appealed to the Merit Systems Protection Board (MSPB) pursuant to 5 C.F.R. §1201.151. If your complaint is a mixed case complaint, and a final decision is not issued within 120 days of the filing date, at any time thereafter, pursuant to 5 C.F.R. §1201.154(a), you may appeal to MSPB or file a civil action as provided in 29 C.F.R. §1614.310(g), **but not both**.

G.  **CLASS COMPLAINTS**

In the event that you wish to file a class complaint, please inform the EEO Staff, who will provide you with information regarding class complaint processing and the responsibilities of class agents.

H.  **RIGHTS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)**

You have the right to file a civil action with a court of competent jurisdiction under the Age Discrimination in Employment Act (ADEA), instead of an administrative EEO complaint of age discrimination, when age is alleged as a basis for discrimination, pursuant to 29 C.F.R. §1614.201(a). Prior to filing such a lawsuit, however, you must provide the EEOC with written notice of your intent to file such an action, not less than 30 days before the filing of the lawsuit. In addition, this notice must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful practice.

You must submit the notice to:

Equal Employment Opportunity Commission
Office of Federal Operations
Attention: Hearing Programs Division
1801 L Street, NW
Washington, D.C.  20507

I.  **RIGHTS UNDER THE EQUAL PAY ACT (EPA)**

You have the right to file a civil action with a court of competent jurisdiction on claims of sex-based wage discrimination under the Equal Pay Act, without first filing an administrative EEO complaint, even though such claims are also cognizable under Title VII. In addition, sex-based claims of wage discrimination may be raised under both the Equal Pay Act and Title VII in an administrative EEO complaint processed under 29 C.F.R. §1614.

-4-

**J.    RIGHT TO REQUEST A HEARING**

You have the right to request a hearing before an EEOC Administrative Judge (except in a mixed case complaint): 1) after 180 calendar days from the filing date of your original formal complaint; or 2) within 30 days of your receipt of the summary of the investigation (or ROI) and the investigative file following the completion of the investigation; or 3) within the time period contained in an order from the EEOC Office of Federal Operations on an appeal from a dismissal, pursuant to 20 C.F.R. §1614.107.

If you wish to request a hearing, you must make that request, in writing, addressed directly to the appropriate EEOC District Office. Your request must certify to the Administrative Judge that a copy of the request was sent to the EEO Staff, at the following address:

> Juan E. Milanés
> Assistant Director
> Executive Office for United States Attorneys
> Equal Employment Opportunity Staff
> National Place Building
> 1331 Pennsylvania Avenue, N.W., Suite 524
> Washington, DC 20530-0001

Consult the EEO Staff member assigned to your case, or your EEO Counselor, for the address of the appropriate EEOC District Office where a request for a hearing should be sent.

**K.    RIGHT TO AN IMMEDIATE FINAL DECISION IF NO HEARING IS REQUESTED**

You have the right to an immediate Final Agency Decision at the conclusion of the investigation of your complaint, in accordance with 29 C.F.R. §1614.108(f), as an alternative to a hearing before an EEOC Administrative Judge.

**L.    AMENDMENTS, NEW COMPLAINTS, AND CONSOLIDATION OF COMPLAINTS**

You may amend your complaint to include issues or claims like or related to those raised in the complaint at any time prior to the conclusion of the investigation. If you request a hearing, you must file a motion with the Administrative Judge assigned to your case in order to amend the complaint to include issues or claims like or related to those raised in the complaint pending before the Administrative Judge.

-5-

If you have filed two or more complaints which are like or related to each other, the EEO Staff shall consolidate them after appropriate notice to you, in accordance with 29 C.F.R. §1614.606. When a complaint has been consolidated with one or more earlier complaints, the agency shall complete its investigation within the earlier of 180 days after the filing of the last complaint, or 360 days of the filing of the original complaint.

In the event your complaint is amended or consolidated, you may request a hearing before the EEOC at any time after 180 calendar days have elapsed since the filing of your original formal complaint.

**M.     RIGHT TO APPEAL DISMISSAL OR FINAL ACTION**

You have the right to appeal the final action on, or dismissal of, your complaint. You will be notified, in writing, if all or any part of this complaint is being dismissed. Issues being dismissed will not be investigated by the EEO Investigator assigned by this office. However, the decision to dismiss, or otherwise not accept for investigation, any portion of the complaint, is reviewable by an administrative judge if a hearing is requested on the accepted issues, but is not appealable until final action is taken on the portion of the complaint that was investigated. If you do not request a hearing, your formal complaint will be forwarded to the Department of Justice Complaint Adjudication Officer (CAO) for a final agency decision, without a hearing.

**N.     RIGHT TO FILE A CIVIL ACTION**

You may file a civil action in the appropriate Federal district court if your formal complaint has not been investigated, or a final agency decision issued, within 180 calendar days of the date that you filed your formal complaint, or 180 calendar days after you filed an appeal with the EEOC, if no decision has been issued.

**O.     RESPONSIBILITY TO MITIGATE DAMAGES**

You have the duty to mitigate damages, i.e., you must look for other appropriate employment and you must seek treatment for any injury you claim. Interim earnings, or amounts that you could earn in the exercise of reasonable diligence, generally will be deducted from any award of back pay that you might ultimately secure.

**P.     REJECTION OF AGENCY OFFER**

Your rejection of an agency's offer of resolution made pursuant to 29 C.F.R. §1614.109(c) may limit the amount of attorney's fees or costs you might ultimately be able to recover.

-6-

**Q.  <u>RESPONSIBILITY TO KEEP AGENCY INFORMED</u>**

    You have the duty to keep the Executive Office for United States Attorneys (EOUSA) EEO Staff, and the EEOC informed of your current address and telephone number, and to serve copies of appeal papers on the EOUSA EEO Staff at the address listed in Section M above.

    If you have any questions regarding the aforementioned rights and responsibilities, you have an obligation to seek clarification from the EEO Staff member assigned to your case.

# READ CAREFULLY

• This form should be used only if you, as an applicant for Federal Employment or as a Federal Employee, think you have been discriminated against because of race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation, parental status or reprisal by a FEDERAL agency, and have presented the matter for informal resolution to an Equal Employment Opportunity (EEO) Counselor within 45 calendar days of the date the incident occurred or, if a personnel action, within 45 calendar days of its effective date.

• Your complaint must be filed within 15 calendar days of the date of your receipt of the Notice of Final Interview with the EEO Counselor. If the matter has not been resolved to your satisfaction within 30 calendar days of the date you contacted the EEO office and the final counseling interview has not been completed within that time, you have the right to file a complaint at any time thereafter up to 15 calendar days after your receipt of the Notice of Final Interview. These time limits will only be extended under limited circumstances.

• The EEO Counselor or the EEO Officer will assist you in preparing your complaint, upon request.

• Your written complaint should be filed by you with the EEO Officer for the Bureau where the alleged discrimination occurred.

• You may have a representative at all stages of the processing of your complaint.

• You will have an opportunity to talk with an impartial investigator and present all facts which you believe support your complaint of discrimination.

• After the investigation of your complaint has been completed, you will be furnished a copy of the investigative file. You will then be given an opportunity to request a final agency decision by the Department of Justice's Complaint Adjudication Officer (CAO) or a hearing before the Equal Employment Opportunity Commission (EEOC), which will be conducted by an Administrative Judge of the EEOC. At the hearing, which will be held at a convenient time and place, you may present witnesses and other evidence in your behalf.

• If your complaint is based upon sexual orientation or parental status, your investigative file will be reviewed by the Department of Justice's CAO and a final decision will be rendered with no entitlement for further administrative review.

• If a hearing is held on your complaint and a decision is rendered, the CAO will take final action on your complaint by issuing a final order. The final order will notify you whether or not the agency will fully implement the Administrative Judge's decision and it will explain your appeal rights. If you elect to have an immediate final agency decision without having a hearing, the CAO will take final action on your complaint by issuing a final agency decision which consists of findings on the merits of each issue in the complaint. The final agency decision will also include an explanation of your appeal rights.

• If you are not satisfied with the final order or final agency decision, you have the right to file a written appeal with the EEOC, Washington, DC, within 30 calendar days after your receipt of the final order or final agency decision. A copy of your appeal must be provided to the agency at the same time it is filed with the EEOC.

• If your complaint is based upon race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental) or reprisal, you also have the right to file a civil action in the appropriate Federal District Court:

(a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;

(b) After 180 days of filing an individual or class complaint if an appeal has not been filed and final action has been taken;

(c) Within 90 days of receipt of the Commission's final decision on an appeal; or

(d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

NOTE:    Special statutory provisions (PL 93-259) relating to the right to file a civil action apply to age discrimination complaints. Please consult with your EEO Officer for assistance.

**U.S. Department of Justice**

# Complaint of Discrimination

*(See instructions on reverse)*

| PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal. | The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action. |
|---|---|

**1. Complainant's Full Name**

**2. Your Telephone Number (including area code)**

Home _____

Street Address, RD Number, or Post Office Box Number

Work _____

City _____ State _____ Zip Code _____

**3. Which Department of Justice Office Do You Believe Discriminated Against You?**

**4. Current Work Address**

**A. Name of Agency Where You Work**

**B. Street Address of Office**

**B. Street Address of Your Agency**

**C. City** _____ State _____ Zip Code _____

**C. City** _____ State _____ Zip Code _____

**D. Title of Your Job** _____ Grade _____

**5. Date on Which Most Recent Alleged Discrimination Took Place**

mm/dd/yyyy

**6. Check Below Why You Believe You Were Discriminated Against?**

- [ ] Race or Color (Give Race or Color) _____
- [ ] Religion (Give Religion) _____
- [ ] Sex (Give Sex) [ ] Male [ ] Female
- [ ] Sexual Harassment
- [ ] Age (Give age) _____
- [ ] National Origin (Give National Origin) _____
- [ ] Disability [ ] Physical [ ] Mental

- [ ] Sexual Orientation
- [ ] Reprisal
- [ ] Parental Status
- [ ] Class Complaint

**7. Explain How You Believe You Were Discriminated Against** *(treated differently from other employees or applicants)* **Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Sexual Orientation, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)***

| PLEASE CLICK HERE TO CONTINUE EXPLANATION |
|---|

**8. What Corrective Action Do You Want Taken on Your Complaint?**

**9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.**

**B) Name of Counselor**

DATE OF FIRST CONTACT WITH EEO OFFICE:    mm/dd/yyyy

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR:    mm/dd/yyyy

- [ ] I Have Not Contacted an EEO Counselor

**10. Date of This Complaint:**  mm/dd/yyyy

**11. Sign Your Name Here:**

FORM DOJ-201A
MAR. 2001

# Exhibit 12

<u>Spelke v. Gonzales</u>, Civil No. 06-1887 (RJL)

<u>Exhibit 12</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment



**U.S. Department of Justice**

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

December 7, 2005

> **RECEIVED**
> DEC – 9 2005
> BY:

Kevin Byrnes, Esquire
Wade & Byrnes P.C.
616 North Washington Street
Alexandria, VA 22314-1991

*Re: Robert A. Spelke*

Dear Mr. Byrnes:

I am writing in response to your October 6, 2005, letter to United States Attorney Kenneth L. Wainstein concerning Robert A. Spelke's application to rejoin our Office as an Assistant United States Attorney in the Civil Division.

Please be assured that hiring decisions in our Office are made for legitimate, non-discriminatory reasons based on the needs of the Office and the individual merits of the candidates. We have reviewed the circumstances of Mr. Spelke's application for employment and determined that neither his age, his physical condition as referenced in your letter, nor any other "inappropriate criteria" were factors in his non-selection.

We appreciate Mr. Spelke's interest in returning to our Office, and regret that we are unable to offer him a position at this time.

Sincerely,

CHANNING D. PHILLIPS
Principal Assistant United States Attorney

# Exhibit 13

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 13</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

DECLARATION OF CHANNING PHILLIPS
Complaint of Discrimination
Agency No. USA-2006-00075 (HH)

<u>Preliminary Questions</u>

1.  What is your full name?

    Channing D. Phillips.

2.  What are your age, gender and date of birth?

    47, male, ████ 58.

3.  What are your position title and grade?

    Principal Assistant United States Attorney.

4.  What are your job duties?

    My duties include serving as advisor to the U.S. Attorney, Spokesperson for the Office, and Chairperson of the Criminal AUSA Hiring Committee.

5.  How long have you been doing this particular job?

    Since June 2004.

<u>Accepted Issue:</u>

6.  What is your response to the allegations made by the Complaint?

    I believe they are without merit.

7.  Describe your entire involvement in the selection process in regard to Complainant's application to be hired as an AUSA in the Civil Division of the USAO-DC.

    I had no direct involvement in the selection process since Mr. Spelke's application was never forwarded to the Front Office for the U.S. Attorney's consideration as a finalist. I did become aware of Mr. Spelke's interest in working in the Civil Division when his lawyer, Kevin Byrnes, wrote a letter to the U.S. Attorney in October 2005, asking that the U.S. Attorney review his application. The U.S. Attorney asked me to look into the matter and respond to Mr. Byrnes.

    I was already familiar with Mr. Spelke from his days in the Office as a criminal AUSA. I

Page 1 of 3

inquired of Craig Lawrence, the Acting Chief of the Civil Division about Mr. Spelke's application and he advised me that Mr. Spelke had not interviewed as well as the candidates whom the Civil Division had forwarded to the Front Office for further consideration, but that he was still in the pool. Mr. Lawrence assured me that Mr. Spelke's age or physical condition were never factors in his decision to not forward his application to the Front Office. Any other response would have been unacceptable and shocking, especially given this Office's track record for hiring persons of all ages, gender, national origin, sexual orientation, and with disabilities. I, in turn, responded to Mr. Byrnes in December 2005, advising him accordingly and informing him that we would be unable to offer Mr. Spelke a position at this time.

8. Please state whether Complainant was or was not, in your view, qualified for the position of Civil Division AUSA and why.

Since I did not interview him, I am not in a position to definitively answer this question. I have been advised that Mr. Spelke was not the best candidate.

9. Who was the selecting official in regard to Complainant's application?

In this instance, it was Craig Lawrence, Acting Chief of the Civil Division, whom, I believe, received input from his Deputy Chiefs. If the Civil Division had recommended that Mr. Spelke be hired, his application would have been forwarded to the U.S. Attorney, who would have been the selecting official. That did not happen in this instance.

10. At what point and how did you become aware of the Complainant's age and disability status?

I did not become aware of the Complainant's age and disability until we received the letter from his lawyer, Kevin Byrnes, dated October 6, 2005.

11. Please state whether you have any known physical or mental disabilities, actual or perceived.

None that I am aware of.

12. Why was the Complainant not offered a position as a Civil Division AUSA?

His application was never forwarded by the Civil Division to the Front Office for the U.S. Attorney's consideration. When I inquired as to why, I was advised that Mr. Spelke was not among the strongest of the applicants who were forwarded to the Front Office for further consideration. I was advised that his interest in joining our Civil Division was based primarily upon a desire to leave his current position where he had admittedly grown weary of the travel demands. In other words, it was not so much about wanting to do the work of the Civil Division, but rather looking for a position that did not require him to travel.

PURSUANT TO 28 U.S.C. § 1746:

     I, Channing Phillips, declare under penalty of perjury that the foregoing responses, including those contained in any attached or corresponding Continuation Sheet(s), are true and correct.

28 Feb. '06
_____        _____
       DATE                                  Channing Phillips

*PRIVACY ACT NOTICE TO EEO COMPLAINT WITNESSES*
*(OTHER THAN COMPLAINANT)*
*FOR DISCRIMINATION COMPLAINT INVESTIGATIONS*

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613-1614; Title 5, United States Code, Sections 1303-1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

_____          _____
Signature of Interviewer                 Signature of Witness

                                         28 Feb. '06
                                         _____
                                         Date

                                         washington, D C.
                                         _____
                                         Location

# Exhibit 14

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 14</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

U.S. Department of Justice

## Complaint of Discrimination
*(See instructions on reverse)*

USA -2006- 00075 (I*H)

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE- This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if any, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

| 1. Complainant's Full Name | 2. Your Telephone Number (including area code) |
|---|---|
| Robert Andrew Spelke | Home  301-493-4491 |
| Street Address, RD Number, or Post Office Box Number | Work  202-353-3807 |
| 9721 Whitley Park Place | |

| City | State | Zip Code |
|---|---|---|
| Bethesda | MD | 20814 |

**3. Which Department of Justice Office Do You Believe Discriminated Against You?**

United States Attorney's Office for the District of Columbia

B. Street Address of Office

555 4th Street, N.W.

| C. City | State | Zip Code |
|---|---|---|
| Washington | DC | 20530 |

**4. Current Work Address**

1400 New York Ave., N.W.   Washington, DC

A. Name of Agency Where You Work

Department of Justice - Criminal Division

B. Street Address of Your Agency

950 Pennsylvania Ave., N.W.

| C. City | State | Zip Code |
|---|---|---|
| Washington | DC | 20530 |

D. Title of Your Job    Trial Attorney    Grade  GS-15

**5. Date on Which Most Recent Alleged Discrimination Took Place**

mm/dd/yyyy

12/07/2005

**6. Check Below Why You Believe You Were Discriminated Against?**

- [ ] Race or Color (Give Race or Color) _____
- [ ] Religion (Give Religion) _____
- [ ] Sex (Give Sex) [ ] Male [ ] Female
- [ ] Sexual Harassment
- [X] Age (Give age) 48
- [ ] National Origin (Give National Origin)
- [X] Disability [X] Physical [ ] Mental  actual and perceived
- [ ] Sexual Orientation
- [ ] Reprisal
- [ ] Parental Status
- [ ] Class Complaint

**7. Explain How You Believe You Were Discriminated Against (treated differently from other employees of applicants) Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Sexual Orientation, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. (You may continue your answer on another sheet of paper if you need more space.)**

See Attached Statement of Complaint of Discrimination

| PLEASE CLICK HERE TO CONTINUE EXPLANATION |
|---|

**8. What Corrective Action Do You Want Taken on Your Complaint?**

See Attached Statement of Complaint of Discrimination

RECEIVED
2005 DEC 21 PM 1:34
EOUSA
EEO

**9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.**

| DATE OF FIRST CONTACT WITH EEO OFFICE:  mm/dd/yyyy | DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR:  mm/dd/yyyy | B) Name of Counselor |  |
|---|---|---|---|
| 10/28/2005 | 12/07/2005 | Olga MacLean | [ ] I Have Not Contacted an EEO Counselor |

| 10. Date of This Complaint:  mm/dd/yyyy | 11. Sign Your Name Here: | |
|---|---|---|
| 12/21/2005 | *Robert A. Spelke* | |

FORM DOJ-201A
MAR. 2001

## STATEMENT OF COMPLAINT OF DISCRIMINATION OF ROBERT A. SPELKE FOR NON-SELECTION BASED ON AGE AND ACTUAL AND PERCEIVED DISABILITY

The following is a brief synopsis of the facts supporting this complaint of discrimination against the U.S. Attorney's Office for the District of Columbia for violations of the Rehabilitation Act of 1973 and the Age Discrimination in Employment Act:

In July of 2004 I applied for an Assistant United States Attorney (AUSA) position in the Civil Division of the United States Attorney's Office for the District of Columbia (USAO-DC). On July 16, 2004, I was interviewed by Craig Lawrence, Acting Chief, Civil Division, Dan Vanhorn, Deputy Chief, Civil Division, Doris Coles-Huff, Deputy Chief, Civil Division, and Lisa Goldfuss, Assistant United States Attorney. After getting no response for over a year, I wrote a letter to United States Attorney Ken Weinstein on August 2, 2005, asking for the status of my application for the AUSA position in the Civil Division. Again there was no response. My attorney, Kevin Byrnes wrote another letter to United States Attorney Ken Weinstein dated October 4, 2005, again asking for the status of my application. On December 7, 2005, a letter was received from the USAO-DC informing me that I would not be offered a position. Although denying any discriminatory practice, the letter provided no reason for denying me an AUSA position with the USAO-DC.

It should be noted that I previously served as an AUSA with distinction in the USAO-DC between 1987 and 1997. Additionally, I remain employed with the Department of Justice (DOJ) in the Criminal Division and have served in some capacity with the Justice Department since 1984. I have always received superior performance ratings.

During my tenure in the US Attorney's Office I was diagnosed with cancer and endured an extended period of treatments that continues today. The Office was, and is, therefore, knowledgeable of my prior disabling condition and I believe perceives me as a disabled. It is the perception of disability that I believe lies at the heart of my rejection for a position combined with my age.

Comparators support my perception. While my application was pending with the USAO-DC, at least four individuals were hired by the Civil Division. These individuals are Kathleen Konopka, Magan L. Rose, Bendon Peterson, and Mercedh Momeri. These four individuals are all younger in age than I, have less government service, less trial experience and, to the best of my knowledge, have no physical disabilities, (actual or perceived) as I do.

Since I was not provided a legitimate business justification for the non-selection decision, and believe I was more amply qualified for the position in terms of experience, I can not help but conclude that the decision not to hire me was based on the discriminatory factors of age and perceived or actual disability.

In terms of remedial action and compensation I would like to receive the following:

1. Selection for a position in the U.S. Attorney's Office that is commensurate with my grade, skills and level of experience.

2. An explanation as to the prior delay and a rationale for my non-selection or in the alternative, to be credited for senior assignments within the USAO, based on a start date of August 2004, in addition to any otherwise authorized or generally accepted credit for prior DOJ experience.

3. Payment of all attorney's fees incurred in resolving the matter with the USAO.

# Exhibit 15

<u>Spelke v. Gonzales</u>, Civil No.  06-1887 (RJL)

<u>Exhibit 15</u> to Defendant's January 2007
Motion to Dismiss or, in the Alternative, for Summary Judgment

## REBUTTAL DECLARATION OF ROBERT ANDREW SPELKE
## COMPLAINT OF DISCRIMINATION
## AGENCY NO USA-2006-00075

In rebuttal to the affidavits and information provided by Kenneth L. Wainstein, Channing Phillips, Monty Wilkinson, Craig Lawrence, Daniel F. Van Horn, Doris Coles-Huff and Lisa Goldfluss, the managers at the United States Attorney's Office for the District of Columbia (USAO-DC) in response my complaint of discrimination for failure to hire I provide the following:

All three supervisors at the Civil Division of the USAO-DC, i.e., Mr. Lawrence, Mr. Van Horn and Ms. Coles-Huff, agree that my qualifications and experience meet the criteria for an Assistant United States Attorney position with the Civil Division. Despite this position, Mr. Lawrence indicates that he consulted with John Fisher, then Chief of the Appellate Division and Mary Lou Leary, then an Assistant United States Attorney concerning my application. Indeed, Mr. Lawrence stated that he placed emphasis on the opinion of Mr. Fisher as a supervisor in the Appellate Division. According to Mr. Lawrence, both Mr. Fisher and Ms. Leary were "equivocal" about my application. No other details were provided by Mr. Lawrence on his conversation with these two individuals.

As for Mr. Fisher, despite Mr. Lawrence's assumption, he was never my supervisor at any time during my ten years with the USAO-DC. When I served in the Appellate Division, Mr. Fisher, to the best of my recollection, was not even a member of the USAO-DC. At that time, the Chief of the Appellate Division for the USAO-DC was Michael Farrell, *not* Mr. Fisher. Since he never supervised my work, it would be fruitless to rely on his opinion of my abilities.

As for Ms. Leary, she, too, was never my direct-line supervisor. Ms. Leary and I did work closely, however, when we served together on a felony trial team. Ms. Leary was the senior prosecutor on the three person team before the Honorable Richardo Urbina in the District of Columbia Superior Court. Being the most junior of the team, I was responsible for the prosecuted of drug felonies. Ms. Leary and I were team members for approximately one year in 1990. My performance during this one year time period was the basis of a monetary Superior Achievement Award. At no time during this time period did Ms. Leary ever question or criticized my ability or work ethic. I have had only very limited contact with Ms. Leary since I left the USAO-DC approximately eight years ago.

It should be pointed out that both Mr. Fisher and Ms. Leary were well aware of my disabilities while I was in the office. I suggest both be asked to provide statements under oath on this issue and both be asked whether they communicated that fact to the interviewing committee.

What is most striking, however, is that no Civil Division supervisor, including Mr. Lawrence, made any attempt to contact my *current* supervisor. If the office was truly concerned with the quality or ability to perform my work rather than my age and perceived disability, it would seem that at least one individual would have contacted the individual(s) that *presently*

supervise my work. Clearly, my current supervisor at the Narcotics and Dangerous Drug Section would have been in a better position to comment on my writing and litigation skills than Mr. Fisher and Ms. Leary. At a minimum, Mr. Lawrence could have contact Judge Urbina, who I appeared before daily for three of my ten years at the USAO-DC, to seek his assessment of my abilities.

In addition, Ms. Cole-Huff, although admitting that I am qualified for the job, stated that other candidates had civil experience. While that may be true, she fails to recognize that other candidates that were hired also had no civil experience. The hiring history of the Civil Division includes volumes of individuals that have been hired or transferred to the Civil Division without any civil litigation experience. Nonetheless, Ms. Cole-Huff, readily admits that I have the ability to learn civil litigation quickly.

According to all three supervisors at the Civil Division, the reason they did not hire me was because of my desire to travel less than my present position. Apparently, they interpreted this to mean that I was simply looking for a way out of my present employment rather than a true interest in the Civil Division. In contrast, Mr. Lawrence never questioned the motivation and ability of Ms. Konopka, an individual hired instead of me with no civil litigation experience, who was working for the Department of Justice Inspector General's Office and wanted to come "back to litigation" nor Mr. Peterson, another individual who was hired instead of me, who simply "wanted to come back to our office". *See Affidavit of Craig Lawrence,* paragraph 17.

I believe this reason is a pre-text for failing to hire me because of my age and perceived disability. During my lengthy interviews, I discussed *both* my reasons for leaving my present position as well as my desire to work for the Civil Division. Indeed, my statement about travel was not the only reason I gave to leave my present position nor why I was interested in the Civil Division. Rather, I indicated that I was looking for a new and exciting challenge in civil litigation. During my career with the Department of Justice, I have done countless drug prosecutions, from simply possession to international drug smugglers. I was excited at the opportunity to learn civil litigation and explained how that would compliment my career as a government attorney. I specifically told Ms. Cole-Huff that I knew the Civil Division worked harder than the Criminal Division, had no illusion about the immense caseload but was looking forward to coming back to the USAO-DC as an AUSA in the Civil Division.

Pursuant to 28 U.S.C. Section 1746:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Robert A. Spelke                                    4/24/06
                                                    Date